THE STATE ex rel. MISSOURI PACIFIC RAILWAY COMPANY et al. v. GEORGE H. WILLIAMS, Judge.

In Banc, June 8, 1909.

1. **PROHIBITION: When Writ Lies.** The writ of prohibition lies to prevent an excessive or unauthorized application of judicial power, and also to prohibit a court from assuming judicial power not granted by law.

2. **———: Premature: Injunction: Ruling on Motions.** An adverse ruling of a circuit court is not a jurisdictional requirement in prohibition. But aside from that, where relators, who are defendants in the circuit court, filed their motion therein to vacate the injunction order for that the plaintiff had given no bond, and that motion was overruled, and the respondent judge continued the hearing for twenty days over defendants' objections and in this court by his motion to dismiss asserts that he has jurisdiction in said cause, the writ of prohibition is not premature. For even if the law required a motion to

dismiss the injunction in the circuit court for want of jurisdiction, it would be idle to send relators to that court merely to have a formal denial of their motion entered of record.

3. ———: Jurisdiction in Federal Court. Where the Federal court had obtained jurisdiction of the parties and subject-matter, and had made its decree therein, the State court cannot entertain a suit to defeat the result of the adjudication in that court.

4. ———: ———: Two-Cent Fares. Where the Federal court, having jurisdiction over the subject-matter and the parties, in an injunction suit by the railroad companies against the proper State officers, adjudged the Two-Cent Passenger Act of 1907 to be confiscatory and void, and affirmatively adjudged that the railroad companies should be permitted, without interference from said officers, prosecuting attorneys, or any other persons, to return to the rates that were in force prior to said act, namely, three cents a mile, and retained jurisdiction of the cause for the purpose of making any supplemental orders that might be necessary to enforce said decree, the circuit court of the city of St. Louis has no authority, at the suit of the circuit attorney, to enjoin the said railroad companies from charging a passenger rate of more than two cents a mile.

5. ———: ———: ———: Combination. Charges in the bill of an illegal combination and confederacy between defendant railroad companies,. going only to establishing a conspiracy to exact and demand three cents or more than two cents per mile as a charge for hauling passengers, do not conceal the main purpose of the bill which is to defeat the force and effect of the decree of the Federal court and to interfere with its enforcement. Those charges relating to pools, trusts and combinations in restraint of trade do not of themselves constitute the cause of action, but will be held to have been made by way of inducement, or coloring matter.

6. ———: ———: ———: Parties. In determining who are the real parties to different suits the purposes of the suits must be kept in view. In a controversy over passenger rates that railroads may charge, the carriers are the parties on one side, and the shippers and passengers are the parties on the other. And where the suit was brought by the railroad companies in the Federal court to enjoin certain State officers and prosecuting attorneys from putting in force an act of the Legislature fixing passenger rates at two cents a mile, and after said court had adjudged said act to be void, a suit is brought by the circuit attorney of St. Louis in the State court against the railroad companies to restrain them from putting in force a

State ex rel. v. Williams.

higher rate than two cents a mile, the parties in interest are the same, namely, the carriers and passengers; and the State court having no jurisdiction, the writ of prohibition will go.

7. ———: ———: ———: ———: **State as Party.** Nor is the State a party to the said suit brought by the circuit attorney. In no sense does the State have any pecuniary interest as a passenger or shipper in a fare of two cents or three cents a mile.

8. ———: ———: **Wrongful Decision.** A decree of a Federal court, which has jurisdiction of the subject-matter and parties, cannot be impeached collaterally in the circuit courts of this State. If that decree is based upon a misapprehension and mistaken view of a State statute, the remedy is by an appeal to the Supreme Court of the United States, and not by the interference, by a different construction of the statute, by a State court. The law cannot be interpreted and decided in two different ways under the same government. When a Federal court first obtains jurisdiction of a case involving the validity of a State statute fixing a maximum charge for carrying passengers on a railroad, it ought on general principles of jurisprudence to be permitted to finish the inquiry and make a conclusive judgment to the exclusion of all other courts.

9. **INJUNCTION: Bond: State As a Party.** A bond should be required in an injunction suit instituted by the circuit attorney of St. Louis against the railroad companies of this State to restrain them from putting into force throughout the State a passenger rate alleged by the bill to be illegal. The State is not a party to such a suit, although it is brought in the name of the State at the relation of the circuit attorney. The circuit attorney has no right to bring such a suit in the name of the State. [LAMM, J., dissenting.]

10. ———: **State As Party: Suit by Circuit Attorney: Bond.** Neither the circuit attorney of St. Louis nor any prosecuting attorney may use the name of the State in an injunction suit to enjoin corporate delinquencies or abuses occurring outside of his respective city or county. Neither can use the name of the State in a suit to enjoin railroad companies with lines throughout the State from putting into force a passenger rate alleged to be illegal.

*Held,* by LAMM, J., dissenting, that a prosecuting attorney of a county, suing in the name of the State for a violation of State laws in a matter affecting the whole State in the enforcement of law, may sue out a temporary injunction without giving bond.

11. ————: ————: **Who Can Bring.** Where the State is the plaintiff in its own behalf the injunction suit should be instituted by the Attorney-General.

*Held,* by LAMM, J., dissenting, that the Attorney-General has no power different in quality to sue out in the name of the State a temporary injunction without giving bond, in a matter affecting the whole State, that a prosecuting attorney does not have. But a temporary writ of injunction ought not to be granted, at the suit of either, where the interests of justice may be subserved by issuing but one writ and that a final one.

12. ————: **Anti-Trust Law: Railroads.** Sec. 8970, R. S. 1899, and the amendment thereto, do not confer jurisdiction upon circuit courts to restrain agreements between railroad companies as to passenger traffic, but by their own terms they are confined to persons or corporations dealing in commodities.

*Held,* by LAMM, J., dissenting, that to hold the anti-trust laws are not leveled at combinations relating to passenger rates is not a necessary construction, and unnecessarily establishes a great defect in them which an allowable construction will obviate.

13. ————: **No Bond: No Jurisdiction.** Where the statute requires a bond, as it does in all cases "except in suits instituted by the State in its own behalf," without a bond executed and approved before the injunction is issued, the court of equity acquires no jurisdiction by the issuance of an injunction writ.

14. **PROHIBITION: Injunction: Contempt of Writ.** *Held,* by LAMM, J., that where a relator applies to the Supreme Court for a writ of prohibition to prohibit a circuit court from further maintaining a temporary writ of injunction theretofore issued and from taking any further cognizance of an injunction suit designed to restrain relator railroad company from putting into force a passenger rate of three cents a mile, a violation of said temporary writ while the application for the writ of prohibition is pending in the Supreme Court is a contempt of the circuit court, and the writ of prohibition should be denied.

## Prohibition.

PEREMPTORY WRIT AWARDED.

*Martin L. Clardy, Samuel H. West, Gardiner Lathrop, T. N. Morrow, R. F. Walker* and *Geo. P. B. Jackson* for relators.

(1) The suit instituted by Circuit Attorney Jones in St. Louis is a mere subterfuge and a disguise for an attempt to defeat the decrees of the United States Court at Kansas City and to prevent the plaintiffs in those suits from realizing any benefit or advantage thereunder. The suit of State ex rel. Jones v. Relators and other Companies, is not within the jurisdiction of the circuit court of the city of St. Louis and it is an abuse of the jurisdiction of that court for the respondent to retain jurisdiction over that case and to refuse to dismiss the same and discharge relators therefrom. To conceal and disguise the real purpose of that suit, and to make a pretense of its being within the jurisdiction of the circuit court of St. Louis, the plaintiff in that case refers to and mentions various sections of the Constitution of Missouri and of the Revised Statutes of 1899 and of the Laws of 1907, which it is claimed have been violated by the relators, or which it is claimed authorize the institution and prosecution of the suit by Circuit Attorney Jones. These various provisions of law invoked and relied upon as the authority for prosecuting the case in the circuit court are as follows: Constitution, art. 12, secs. 14, 17 and 23; R. S. 1899, secs. 1062, 1127 and 1128; Act March 19, 1907, Laws 1907, pp. 377-382. Relators contend: 1. That, with one possible exception, none of the statutes or sections of the Constitution or statutes mentioned have any application to passenger business. 2. That, as to that possible exception, the statute provides a proceeding to be conducted by the Board of Railroad Commissioners who alone are authorized to determine whether or not a suit shall be brought, and if brought, it must be by the commissioners, who alone, and not the Governor of the State,

may call upon the Attorney-General to conduct such suit, for and in the name of the commissioners. 3. That the circuit courts of the State have no jurisdiction of such cases except by virtue of that statute, and only when the suit is instituted by the commissioners as above. 4. The circuit attorney of St. Louis has no general power to institute suits on account of matters outside the city of St. Louis, and no special power under any of the laws in question to institute this suit, and therefore there is no proper plaintiff—no one authorized to sue or recover, standing in the attitude of plaintiff. 5. The State is not the real plaintiff in this case. 6. The court was without power to grant a temporary injunction or restraining order without bond. 7. The subject-matter of passenger rates was and is involved in the suits in the United States court, which acquired jurisdiction over said cases and over that subject-matter in June, 1907, and rendered decrees therein on March 8, 1909, and still retains jurisdiction over all matters involved in said suits and pertaining thereto, that it may, within the recognized jurisdiction of courts of equity, make such farther orders and decrees as may be necessary to accomplish justice between the parties to said cases, and the St. Louis Circuit Court and Respondent Williams exceeded and abused the jurisdiction of that court and unnecessarily and improperly brought about a conflict between the State and Federal Courts, by entertaining the case of State ex rel. Jones and in granting the restraining order therein. (2) Prohibition is the proper remedy to prevent a court from assuming a jurisdiction it has not or exceeding a jurisdiction it has, and whenever the attention of a superior court, authorized to issue writs of prohibition, is, by the proper party, formally called to the pendency of a suit in an inferior court which has no jurisdiction to hear and determine the same, the writ will issue. State ex rel. v. Aloe, 152 Mo. 484; State ex rel. v. Eby, 170 Mo. 518; 19 Am. and

Eng. Ency. Law, 273 (Note); Shortt on Prohibition, 459; Keough v. Grime, 53 N. E. 135; Havemeyer v. Superior Court, 84 Cal. 327. (3) As the record shows, the "preliminary steps" were taken in the inferior court by the defendants—relators here. They filed motions to vacate the restraining order and other motions to dismiss the case. The court, after overruling the motions to vacate such order for the failure of the plaintiff to give bond, continued the hearing on the motions, against the objection of these relators, until May 15th, twenty days from that time. It was not necessary for the defendants in that suit to file a motion to dismiss or to plead to the jurisdiction of the court if it be true that the petition in that case conferred no jurisdiction on the court, but they did file the motions, and endeavored to get rulings thereon. (4) The extravagant allegations in both the original and the amended petitions in the case of State ex rel. Jones and the strained application which is attempted to be made of the constitutional and statutory provisions of this State, characterize the proceeding as one by which it is hoped to accomplish by indirection something which could not be done directly; that is, to defeat the final decree of the United States court. It will be claimed that the purpose of the suit in St. Louis is to prevent an alleged combination and agreement for discrimination between passengers and to prevent the exaction of unreasonable fares; but that that is not the real purpose of the suit is made manifest both by the prayer of the petition and the terms of the restraining order. The plaintiff in that case was not content to pray for an injunction restraining the railroad companies named from carrying out the alleged agreement and combination to discriminate, but after so praying, shrewdly, in the end, seeks to prevent the railroad companies from charging more than two cents a mile, which is the very subject-matter of the suits in the United States Court. (5) The construction of the

Anti-Trust Law by this court, thus declaring that it is limited in its scope and operation to persons and corporations dealing in commodities, precludes the possibility of its applying to the transportation of passengers or to passenger rates, and, therefore, it cannot be construed as a law declaring unlawful any agreements in regard to the passenger business of railroads. State ex inf. v. Standard Oil Co., 218 Mo. 1. (6) It is also claimed that the railroad companies were violating section 23 of article 12 of the Constitution, and that they had entered into an agreement for a discrimination which is condemned by that section and is therefore unlawful. But the alleged discrimination through the use of tickets to be sold at different rates per mile under different circumstances, is clearly not comprehended by section 23, article 12, of the Constitution. That was to prevent a wrong, which it was claimed was formerly practiced against certain patrons of railroads by giving advantages to transportation companies over individuals. (7) The petition also relies upon section 1128, R. S. 1899, and that has no application to the subject-matter of the suit instituted by the circuit attorney. Reference to the language of the statutes is sufficient to show that as a regulation of the business of transportation on railways it relates to freight only. (8) The circuit attorney of the city of St. Louis was not authorized to institute the suit in the St. Louis Circuit Court and is not now authorized to stand in that case in the attitude of plaintiff or relator therein. Sec. 540, R. S. 1899; State ex rel. v. Muench, 217 Mo. 124; Cope v. Blair, 105 Mo. 93; sec. 4943, R. S. 1899; State ex rel. v. McSpaden, 137 Mo. 628; State ex rel. v. Vandalia, 119 Mo. App. 406; Ex parte Young, 209 U. S. 152; Reagan v. Loan & Trust Co., 154 U. S. 362; Smyth v. Ames, 169 U. S. 466; Railroad v. Hickman, 183 U. S. 53; Prout v. Starr, 188 U. S. 537; State Bank ex parte, 15 Ark. 267; State ex rel.

v. Green, 67 N. W. 162. (9) When the respondent as judge insists upon retaining jurisdiction and con-tends, as he does in his pleadings in this court, that the St. Louis Circuit Court "had and has jurisdiction," and in effect says that he intends to exercise that jurisdiction, he is acting in abuse and in excess of the proper jurisdiction of that court. (10) It is claimed by respondent that the parties to the suit are not the same. We submit, however, that with the principle of the cases previously referred to, they are the same, —although it is not material that they should be identically the same. The cases of Reagan v. Trust Co., 154 U. S. 362; Railroad v. Railroad Commissioners of Mo., 183 U. S. 53; Prout v. Starr, 188 U. S., and Ex parte Young, 209 U. S. 152, have been previously cited in this brief to the point that the State is not the real party. In the controversy over what rates a carrier may charge, no matter in what form the question comes up, the carrier is the party on one side, and the shippers and passengers are the parties on the other side. 1 Spelling, sec. 7; Griffith v. Waterworks Co., 40 So. 1011; State v. Julow, 129 Mo. 163; State ex rel. v. Associated Press, 159 Mo. 455; State v. Loomis, 115 Mo. 307; Allgeyer v. Louisiana, 165 U. S. 589; Peck v. Jenness, 7 How. 625; Taylor v. Royal Saxon, 1 Wall. Jr. 311; French v. Hay, 22 Wall. 250; Kern v. Huide-koper, 103 U. S. 494; Sharon v. Hill, 26 Fed. 337; Railroad v. College, 208 U. S. 609; Lang v. Railroad, 160 Fed. 355; Sullivan v. Algrem, 160 Fed. 366; Prout v. Starr, 188 U. S. 537.

*John Kennish* and *Jeptha D. Howe* for respondent.

(1) The petition in the cause pending before the circuit court states a cause of action and shows every jurisdictional requisite. The record shows and the petition charges that relators have entered into a combination and agreement between said railroad com-

panies, relators fixing a passenger charge for intrastate travel over their lines, which is exorbitant, unreasonable and oppressive and discriminatory as between different passengers over their several roads in intrastate travel, and that such combination and agreement by the railroad companies operating in the State of Missouri are in violation of the Constitution and laws of Missouri, preventing combinations and agreements as to passenger rates between said companies, and forbidding rates to be exorbitant, oppressive or unreasonable, and prohibiting discrimination, and said suit is an appropriate suit to correct said alleged wrongs. Const., art. 12, secs. 14, 17, 23; R. S. 1899, secs. 1062, 1127, 1128; Laws 1907, pp. 377-382; Trust Co. v. Georgia, 48 L. R. A. 520; State ex rel. v. Saline Co., 51 Mo. 350. (2) The circuit attorney of the city of St. Louis had authority under the Constitution and laws of this State by virtue of his office, to institute and maintain said suit in the name of the State at his relation, and there is a proper party plaintiff. R. S. 1899, sec. 8970, amended Laws 1907, p. 379; R. S. 1899, secs. 4950, 4959; State ex rel. v. McMillan, 108 Mo. 157; State ex rel. v. Gravel Road, 138 Mo. 340; State ex rel. v. Road Co., 207 Mo. 70; State ex rel. v. Gravel Road, 116 Mo. App. 192; State v. Saline County Court, 51 Mo. 360; State ex rel. v. Zachritz, 166 Mo. 314. (3) The circuit court of the city of St. Louis had and has full jurisdiction over the parties and over the subject-matter of the said cause pending before said court, and has in nowise exceeded its jurisdiction. The test as to whether or not the circuit court is actually proceeding or is about to proceed in some matter over which it possesses no jurisdiction is the petition pending before the trial court and the right to make the preliminary rule of prohibition absolute must stand or fall upon the petition presented by relators. State ex rel. v. Ryan, 180 Mo. 32. Jurisdictional questions only will be determined by proceedings in prohibition. The

only questions involved in proceedings at prohibition
are: First. Has the inferior tribunal exercised and is
it exercising jurisdiction which it does not possess?
Second. After having jurisdiction over the subject-
matter, has it exceeded its lawful power? State ex
rel. v. Withrow, 108 Mo. 1; State ex rel. v. Fox, 85 Mo.
61; State ex rel. v. Ryan, 180 Mo. 32; State ex rel. v.
Dearing, 180 Mo. 53. The remedy by injunction exists
to prevent the doing of any legal wrong whatever,
whenever in the opinion of the court an adequate rem-
edy cannot be afforded by an action for damages. R. S.
1899, sec. 3649. (4) The petition for prohibition herein
was prematurely filed by relators. The relators ap-
peared in the circuit court and filed motions to vacate
the restraining order issued by said court, and also to
dismiss said proceedings, and all of said motions were
pending and undetermined in said court at the time
of the filing of the petition herein and the granting of
the preliminary rule of prohibition by this court. Re-
lators having raised the question of jurisdiction in the
circuit court, should have given the circuit court an
opportunity to pass upon the jurisdictional question
before appealing to this court. Relators not having
given the circuit court an opportunity to pass upon
their rights in the matter complained of cannot obtain
relief here. The jurisdictional question raised should
have been presented to the inferior court before the
undertaking to obtain a writ of prohibition from a
higher court. State ex rel. v. Gill, 137 Mo. 681; Hud-
son v. Judges, 42 Mich. 239; Railroad v. Superior
Court, 59 Cal. 471; State ex rel. v. Ryan, 180 Mo. 32;
State ex rel. v. Withrow, 108 Mo. 1. (5) Railroad
companies cannot combine to fix rates, even though
such rate should be reasonable or legal. Facts which
govern each railroad company are different and fix
rates, and not agreements. United States v. Trans.
Mo. Freight Ass'n, 166 U. S. 290.

GANTT, J.—This is an original proceeding in this court to obtain a writ of prohibition to prevent the respondent from further entertaining jurisdiction of a certain injunction suit now pending in the circuit court of the city of St. Louis, over which he presides, wherein the State of Missouri at the relation of Seebert G. Jones, circuit attorney of the city of St. Louis, is plaintiff, and the Missouri Pacific Railway Company, the Wabash Railway Company, the Missouri, Kansas & Texas Railway Company, the St. Louis and Western Railway Company, and various other railroads in the State of Missouri, are defendants.

The petition for injunction in the said case states in substance that the defendants are railroad corporations operating under the laws of the State of Missouri, and that each of them was prior to the —— day of March, 1909, a competitor of each of the other defendants in the conduct and operation of railroad business in the city of St. Louis and State of Missouri, and that a number of said defendants owned and operated parallel and competing lines of railroad. The petion then contains a list of the railroad companies which it alleged are parallel and competing lines between Kansas City and St. Louis and in the city of St. Louis, and that the other railroads named therein own and operate parallel and competing lines of railroad with each other in the city of St. Louis and in other parts of the State; that under the Constitution and laws of this State, it is the duty of each railroad company to operate and conduct its business separate and distinct from the other railroads and to compete with each other in the rates fixed and charged for the transportation of persons and property (Sec. 11, article 12, Constitution of Missouri); that it is the duty of each of the railroad companies to see that its line of railroad is "run, operated and managed separately and by its own officers and agents, and is dependent for its support on its own earnings, and that the facil-

ities and accommodations afforded the public for travel and transportation are under fair and open competition'' (Sec. 1062, R. S. 1899) ; that it is made the duty of the defendants by article 12, section 23, Constitution of Missouri, and section 1127, Revised Statutes 1899, to transport passengers and freight upon their lines of railroad without discrimination as to persons or localities in charges or in service; that said defendants disregarding their duty and obligation under the Constitution and laws of the State of Missouri in this regard (Constitution, article 12, section 14; article 12, section 17; article 12, section 23; sections 1062, 1127, 1128, R. S. 1899; Act of 1907, approved March 12, 1907, Laws of Missouri 1907, pages 377-382), did on the ———— day of March, 1909, enter into a combination and agreement to defeat fair and open competition in the management and operation of their said lines of railroad by combining and agreeing to charge, exact and receive for carrying passengers wholly within the State of Missouri and the city of St. Louis, three cents a mile. And that each and all of said defendants obligated and bound themselves by said agreement not to carry passengers at a less rate than three cents a mile within the city of St. Louis and State of Missouri; that thereafter, to-wit, on the 31st. day of March, 1909, at the city of St. Louis, said defendants and each of them, in violation of the Constitution and laws of the State of Missouri, entered into a combination and agreement to defeat fair and open competition between said defendants and each of them in the management and operation of their said lines of railroad by combining and agreeing among and between themselves whereby they agreed to carry certain passengers within the city of St. Louis and wholly within the State of Missouri who could purchase or secure from them credentials or mileage books at a less rate than three cents a mile, to-wit, at a rate of two cents a mile, for those who would purchase

two-thousand-mile credential books; and to carry certain persons at a less rate than three cents a mile, to-wit, at the rate of 2½ cents a mile, who would purchase five-hundred-mile mileage books, good upon all of the lines of the said defendants' roads; and at a less rate than three cents a mile, to-wit, at a rate of 2¼ cents a mile, to each person who would purchase a five-hundred-mile mileage book good only in the hands of said book holder on the lines of such defendant road issuing such mileage book, but that said defendants and each of them at said time and place also combined and agreed among themselves, in violation of their obligation under the Constitution and laws of the State of Missouri, to conduct and operate their said railroad business for the acommodation and transportation of the general public "under fair and open competition," that they would exact and receive from all other persons riding upon their said lines of railroad wholly within the State of Missouri and in the city of St. Louis, who did not purchase or secure said credential or mileage books, a charge of three cents a mile as had been previously agreed upon by said defendants as aforesaid; and that said defendants and each of them are threatening to and are about, beginning on the 10th day of April, 1909, and thereafter, unless enjoined and restrained by an order of this court, to exact and receive from such passengers upon their said lines of road in the city of St. Louis and within this State, who do not purchase or secure such credentials or mileage books, as aforesaid, a charge of three cents a mile as a result of said combination and agreement made among said defendants as aforesaid, in violation of the Constitution and the laws of the State of Missouri, and unless enjoined they will "discriminate between passengers upon their said lines of road within the State of Missouri and the city of St. Louis by charging some of the passengers two cents a mile, some two and a half cents

a mile, some two and one-fourth cents a mile, and some three cents a mile as a result of said combination.''

The amended petition then alleges that under the Constitution and laws of this State, defendants are required to transport passengers for fair and reasonable charges, and that three cents a mile and two and one-half cents a mile, which defendants propose to charge or exact, ''are charges unfairly and unreasonably high and are more than sufficient to give said defendants a reasonable return upon the value of their property used in said business in this State.'' That the action of the defendants in carrying out the agreement and combination will work irreparable injury to the people of St. Louis and Missouri and the public welfare, and will result in defendants receiving many thousands of dollars to which they are not entitled, ''but that the amount of such unlawful, unreasonable and discriminatory charges received and exacted by said defendants and each of them from each individual passenger will be comparatively small, and that such passenger will have no adequate remedy at law, and, unless enjoined and restrained by an order of this court from carrying out the provisions of such combination and agreement, and enforcing the discriminations herein described, and exacting the unfair and unreasonable charges hereinbefore described, there will result a great multiplicity of suits by passengers upon said defendants' lines of railroad against said defendants on account of said unlawful combination and agreement and said unlawful and discriminatory charges exacted and received from said passengers by said defendants.'' The petition then alleges that the railroad companies, by reason of their being incorporated and licensed to do business in this State, agreed to comply with the laws of this State, and that if the defendants are permitted to carry out their alleged combination it will interfere with the commerce and

221 Sup—16

business of the State and obstruct and impair the operations of the lines of the railroads of the defendants, contrary to the Constitution and laws of Missouri. The petition then concludes with a prayer that the defendants may be temporarily and permanently restrained from putting the proposed rates complained of into effect and specifically enjoined from charging three cents and for charging more than two cents.

The application for prohibition in this case was presented to this court on April 30, 1909, and contains the above recited petition and amended petition in the said injunction proceedings, and also the orders made by the respondent, Judge Williams, in the said injunction case, to-wit: that upon the filing of the original petition on the 8th of April, 1909, the respondent as judge of the circuit court of the city of St. Louis made and issued a restraining order and set down the application for a temporary injunction for hearing on April 12, 1909, at ten o'clock. In the restraining order defendants were enjoined from charging, exacting or receiving three cents a mile for the transportation of passengers within the State of Missouri and from receiving a higher or greater amount than two cents a mile. It is then alleged that on the 12th of April, the hearing of the application for a temporary injunction was continued until the 23rd of April. That on the 23rd of April, 1909, the relators herein, the defendants in that injunction proceeding, filed their motions to annul and vacate said restraining order and orders, and for grounds thereof among others stated that the circuit attorney of the city of St. Louis, who brought the injunction suit, did not execute and file a bond with sufficient surety, or any bond, in favor of the defendants, as required by the statutes of Missouri; that the said circuit attorney had no authority to institute, prosecute or maintain the suit and that the said court was without jurisdiction to entertain the cause. That the Act of 1907, approved March 19,

1907, had no application to matters and things and business and transactions referred to and mentioned in said petition for injunction; that the subject of passenger rates 'was not in any manner involved in or affected by the aforesaid act; that section 17 of article 12 of the Constitution, and section 1062, Revised Statutes 1899, do not apply to or embrace the matters referred to and mentioned in the petition, and the same is true of sections 1127, 1128, Revised Statutes 1899. That on the face of the petition there is no discrimination pretended or proposed to be practiced and nothing is proposed to be done that is not proper for the railroads to do.' That the restraining order issued by the judge is in conflict with and is violative of the injunction granted by final decree in the cases brought by the railroad companies parties to this injunction suit against members of the Board of Railroad and Warehouse Commissioners, the Attorney-General and the various prosecuting attorneys of the State in the circuit court of the United States for the Western Division of the Western District of Missouri, at Kansas City, in which said cases final decrees have been rendered perpetually enjoining the railroad commissioners and others from enforcing or attempting directly or indirectly by suit or in any other manner to enforce against the railroad companies any of the provisions of or penalties provided for by the acts of the Legislature of the State of Missouri which are set forth in said motions to vacate, and from interfering with the defendants in those cases, relators herein, in restoring and putting in force the rates authorized by sections 1191, 1192 of the Revised Statutes of Missouri, the railroads having been temporarily required to adopt the two-cent rate under the order of the United States Court of June 17, 1907. That the said suit and restraining order in their effect and operation will deny to these relators the benefit of the decrees rendered and entered in their behalf in the said

several cases in the United States Circuit Court. That the said restraining order, by limiting and confining defendants to the use of the rates and passenger fares, deprives these relators of their lawful rights and their property without due process of law. On the 23rd of April, 1909, over the protest of relators, the hearing of said motions to annul and vacate the said restraining order was postponed until April 26th, as was the hearing on the motion filed by the Missouri, Kansas & Texas Railroad Company on that day to dismiss the cause. The other relators filed motions to dismiss that cause on the 26th of April, 1909, all of which said motions appear in the application for prohibition herein, and it may be stated generally that the grounds of said motions are that the circuit attorney had no authority to institute or maintain the suit and that the circuit court was without jurisdiction to maintain the cause and because the circuit court exceeded its jurisdiction in maintaining the same, and other grounds. On the 24th of April, 1909, on the application of the circuit attorney and without any notice to the defendants in that suit, an order modifying the former restraining order was made, which omitted the specific injunction against charging more than two cents a mile, but still restrained and enjoined the companies from charging three cents a mile. It is further stated in the application for prohibition that on the 26th of April, 1909, the respondent judge of the circuit court as aforesaid stated, when he was requested by the counsel for the relators herein to take up, consider and dispose of their said several motions to vacate said injunction and restraining orders, that he had been advised that the United States Circuit Court for the Western Division of the Western District of Missouri had made a supplementary order in the cases therein pending against the Railroad Commissioners and others, and had enjoined the circuit attorney, See-

bert Jones, and his assistants from prosecuting said injunction suit and from taking any further action therein other than to dismiss the same, or to give bond to secure damages, and to have dissolved the restraining order issued therein, and therefore that he, the said respondent judge of the circuit court of the city of St. Louis, would not hear arguments upon said motions, but would take the same and would announce his decision thereon about five o'clock on the evening of the said day; relators herein having appeared in said court, the respondent announced that he had reached the conclusion that as the suit before him was prosecuted under the Act of March 19, 1907, Laws of Missouri, 1907, pages 377-382, the State was a party plaintiff and no bond was required as a condition precedent to the granting of a temporary injunction or restraining order and the motion to vacate the said restraining order would as to the fourth ground thereof (to-wit, that the said Seebert G. Jones had not executed and filed in said cause a bond with sufficient surety in favor of the defendants as required by the statutes of Missouri and the said restraining order had been made in disregard and violation of the statutes in such case made and provided), be overruled, and he would continue said case and the hearing of said motions to May 15th, 1909.

Upon the filing of the petition in this cause for the writ of prohibition a provisional rule was granted and made returnable on the 13th of May. On that day the respondent filed his motion to dismiss this cause upon the following grounds: First, because, as appears by the petition, the circuit court had and has jurisdiction in said cause pending before said circuit court. Second, because, as appears from the petition filed herein by relators, the circuit court of the city of St. Louis had and has jurisdiction in the said cause pending before said circuit court to entertain said suit and make all orders therein as were made and entered in said

cause. Third, because, the petition filed herein for prohibition was prematurely filed in that said application for prohibition was filed before respondent passed upon the motions presented by relators and while said motions were still pending. Fourth, because the petition shows upon its face that relators are charged with entering into a conspiracy to fix passenger rates in violation of the Constitution and laws of the State of Missouri, and the circuit court of the city of St. Louis has and had jurisdiction in the premises to hear the subject-matter complained of. Fifth, because the circuit court of the city of St. Louis is a court of general jurisdiction and had and has jurisdiction over the subject-matter of the proceedings complained of by relator.

The petition and the motion to dismiss, which will be treated in the nature of a demurrer for the purposes of this case, sufficiently present the facts and the contentions of the two parties to enable this court to determine whether the circuit court of the city of St. Louis over which respondent presides is proceeding without jurisdiction or is exceeding its lawful jurisdiction in the said injunction case pending before it.

The office of a writ of prohibition has been defined so often in this jurisdiction that no time or space need be allotted to it, at this time, further than to say that we are required by the application for the writ and the motion to dismiss, to determine whether the circuit court of the city of St. Louis, presided over by respondent, Judge Williams, in retaining and asserting its right to make and enforce the restraining orders, already noted, against the defendants and in asserting its rights to grant perpetual injunctions in said cause, is keeping within the bounds of the jurisdiction prescribed for it by the laws of this State, for it is now the settled doctrine that the writ lies as well to prevent an excessive or unauthorized application of

judicial force as where a court assumes judicial power not granted by law.

I.   In the natural order of things, the objection presented in the third ground of the motion to dismiss should be first disposed of.   It is, that this application to this court is premature because the respondent had not passed upon the motions filed by the relators or plaintiffs in the circuit court.

This contention was answered by this court in State ex rel. v. Aloe, 152 Mo. 1. c. 484, in these words: "It is said by an eminent law-writer that, before the writ of prohibition should issue, it ought to appear that the party applying for it has applied in vain to the inferior tribunal for relief (High on Ex. Legal Rem., sec. 765), and that author cites in support of the proposition a decision of the Supreme Court of Arkansas which does so declare (State ex rel. v. Williams, 48 Ark. 227); but whilst we agree to that general rule, we do not apply it as the counsel who invoke it here insist.   It is not a *jurisdictional* requirement, it is not essential like a motion for a new trial before appeal."   To a like effect is State ex rel. v. Eby, 170 Mo. 518, 521; 19 Am. and Eng. Ency. Law, 273 (note); Shortt on Prohibition, 459; Keough v. Grime, 53 N. E. 135; Havemeyer v. Superior Court, 84 Cal. 327.

But the proposition is without force in this case, for the reason that the relators here, the defendants in the injunction suit in the circuit court, did challenge the proceedings in that court, and the respondent, after overruling the motion to vacate the restraining order for the failure of plaintiff to give bond, continued the hearing on said motions over the objections of the relators, for twenty days, and that respondent is of opinion that he has jurisdiction and intends to assert it is established by the first ground of his motion to dismiss in this court in which he asserts "the circuit court had and has jurisdiction in the said cause

pending before said circuit court." Even if the law required a motion to dismiss the injunction in the circuit court for want of jurisdiction, it would be unreasonable to turn plaintiffs out of this court and send them back to that court merely to have a formal denial of their motion or plea entered upon its records.

II.   Among other averments of the petition there is one which sets forth at length that heretofore there were pending in the United States Circuit Court for the Western Division of the Western District of Missouri, suits in equity instituted severally by the relators herein and similar suits by each of the other railroad companies named as defendants in the suit instituted in the circuit court of the city of St. Louis, hereinafter mentioned, which said several suits were entitled, each respectively, Railroad v. Herbert S. Hadley, Attorney-General of the State of Missouri, John A. Knott, Joseph P. Rice and Frank Wightman, Railroad Commissioners of the State of Mo., et al. (the other defendants being various prosecuting attorneys and citizens of the State of Missouri), and one of the objects and purposes of said suits in equity was to have declared null and void the statute of the State of Missouri enacted by the General Assembly of said State and approved February 27th, 1907, which act repealed section 1191 and 1192 of chapter 12 of article 4 of the Revised Statutes of Missouri, and enacted three new sections to be known as sections 1191 and 1192 and 1192a, in lieu thereof, which said act amended section 1192, Revised Statutes 1899, which limited railroad companies in class A to a charge of not exceeding three cents a mile for transportation of passengers, so as to limit railroad companies in classes A, B C to a charge not exceeding two cents a mile for the transportation of passengers, and provided that any railroad company which should violate any of the provisions of said new section 1192 should be deem-

ed guilty of a misdemeanor and upon conviction should pay a fine of not less than one hundred nor more than five hundred dollars; that due proceedings were had in said causes and the evidence heard and the same were submitted to the court and afterwards by proper orders and entries of record, the Honorable Elliott W. Major, Attorney-General of Missouri, and H. R. Oglesby, member of the Board of Railroad and Warehouse Commissioners of this State, were duly made parties defendants in said suits; that thereafter on the 8th of March, 1909, the said United States Circuit Court rendered final decrees in said cases as prayed, and on April 17, 1909, said decree was amended, wherein it was adjudged and decreed that the said Act of February 27, 1907, reducing the rate of transportation to two cents a mile, and certain other acts therein mentioned, were confiscatory and to compel relators to comply therewith would be to deprive them of their property without due process of law, and thereupon the Attorney-General and Railroad Commissioners and their agents, employees and servants were specifically enjoined from enforcing or attempting to enforce said acts.    The court expressly retained jurisdiction of the cause to bring in any and all other parties from time to time who should attempt or threaten to take any action or institute any proceedings against relators under said statute to the end that supplemental orders or decrees might be made, and especially retained and reserved to itself jurisdiction over all the parties thereto and "all subjects-matter therein" not then covered by the pleadings.    But the court did not stop with this.    The decree further provides, "Some of the defendants having announced their intention to appeal, it is now ordered that no appeal shall supersede the injunctive portions of this decree, but pending any such appeal the complainants shall be permitted to charge the rates permitted by sections 1191 and 1192 of Revised Statutes Missouri, 1899, the same as

if the Passenger Rate Act approved February 27, 1907, and herein held to be confiscatory, had not been passed. Complainant having by order herein of June 17, 1907, been required to temporarily adopt the rate fixed by said Passenger Rate Act, shall be and is hereby permitted, free from the interference of the parties and classes represented by them, who are hereby ordered not to interfere, to restore and put in force the rates authorized by said sections 1191 and 1192, this court reserving the power and jurisdiction from time to time to enforce, change and modify this paragraph of this decree, as well as to protect the complainant in being restored to the right of which said order temporarily deprived it.''

The suit which this court is asked to prohibit is one brought by Mr. Jones, the circuit attorney of the city of St. Louis, against these same relators, in which it is alleged that they had combined to charge three cents a mile for passengers transported by them on their roads, and prays that the defendants therein, relators herein, be temporarily and permanently enjoined and restrained from carrying out said agreement and combination, and that they and each of them be enjoined and restrained from exacting and receiving a charge of *three* cents a mile for the transportation of passengers in the city of St. Louis and wholly within the State of Missouri, in accordance with said combination and agreement; and that they and each of them be enjoined and restrained from charging any passengers upon their said lines of railroad a higher or greater amount than they propose and intend to exact from any other passengers upon their said lines of railroad in this State, to-wit, the sum of two cents a mile, etc.

In short the situation presented to this court by the pleadings is that on the 8th of April, 1909, the United States Circuit Court within and for the Western Division of the Western District of Missouri, with

jurisdiction over the parties and the subject-matter, adjudged the rights of these relators to charge certain rates for the transportation of persons on their several roads. That is to say, the said circuit court, having by its order of June, 1907, compelled these railroads to conform to the limitations of the Act of 1907, to-wit, to carry passengers for two cents a mile, afterwards on March 8th, 1909, adjudged and decreed that the act of the General Assembly of Missouri of February 27th, 1907, was confiscatory, and if enforced would deprive the railroads of their property without due process of law, and therefore was void, and then affirmatively adjudged by its decree that the railroads should be permitted without interference by the Railroad Commissioners of this State or the Attorney-General or other persons to return to the rates that were in force prior to the order of June, 1907, that is, the three cent rate authorized by section 1192, Revised Statutes 1899. Now in this condition of affairs, the circuit attorney of St. Louis, Mr. Jones, brought the proceeding for injunction in the circuit court of the city of St. Louis, over which the respondent, Judge Williams, presides, and however we may look at it, the practical purpose and scope of that suit was to perpetually enjoin the railroads from charging three cents a mile and from charging more than two cents a mile, and thus it cannot be disguised that this injunction suit in the circuit court of the city of St. Louis was brought to defeat the decree of the United States court in so far as the right of the railroad was adjudged by that court to charge three cents a mile for transportation of passengers in this State. The subject-matter of the litigation in both courts was and is the compensation which the relators shall be entitled to for the carrying of passengers on their roads wholly within this State. It must be kept in view that the proceeding in the circuit court of the city of St. Louis is to obtain an injunction against charging more than two cents a mile

by the relators. This is the full scope and effect of the proceeding; it is not ancillary to some other relief which is sought for in the bill, because no other relief is demanded in the bill. While counsel speak of the charges of illegal combination and confederacy, after all, those charges simply go to the establishing of a conspiracy to exact and demand the three cent rate or more than two cents.

But it is urged by the respondent, Judge Williams, that the parties to the said suits are not the same. In determining who are the real parties to these actions, the purposes of the two suits must be kept in view. In a general sense in this controversy over the rates that the railroads may charge, the carriers are the parties on one side and the shippers and passengers are the parties on the other side. The officials of the State who are requird to or who assume to conduct such litigation, represent the shippers and passengers whose interests and rights are being litigated. This is true whether the suit be brought by the carrier against public officials to enjoin the enforcement of some law claimed to be invalid or whether it be brought by the officers of the State against the carriers to enforce some law. In Reagan v. Loan & Trust Co., 154 U. S. 1. c. 388, 389, it was pointed out that an action or suit like that brought by these relators against the Attorney-General and Railroad Commissioners did not infringe the constitutional right of a State to be exempt from suit without its consent. Judge BREWER, speaking for the United States Supreme Court, said: "The other class is where a suit is brought against defendants who claim to act as officers of the State and under the color of an unconstitutional statute commit acts of wrong or injury to the rights and property of the plaintiff acquired under a contract with the State. Such suit whether brought to recover money or property in the hands of such defendants unlawfully taken by them in behalf of the State or for compensa-

tion in damages or in a proper case where the remedy at law is inadequate for an injunction to prevent such wrong and injury or for a mandamus in the like case to enforce upon the defendant the performance of a plain legal duty purely ministerial, is not, within the meaning of the 11th amendment, an action against the State." [Citing numerous cases.] That case is further instructive in view of the contention in this case by the respondent that the injunction in the circuit court of St. Louis is prosecuted for the State in its own right. Judge BREWER, speaking for the court on this point, said: "So far from the State being the only real party in interest and upon whom alone the judgment effectually operates, it has in a pecuniary sense no interest at all. Going back of all matters of form, the only parties pecuniarily affected are the shippers and the carriers, and the only direct pecuniary interest which the State can have arises when it abandons its governmental character and as an individual employs the railroad company to carry its property. There is a sense, doubtless, in which it may be said that the State is interested in the question, but only in a governmental sense. It is interested in the well-being of its citizens, in the just and equal enforcement of all its laws, but such governmental interest is not the pecuniary interest which causes it to bear the burden of an adverse judgment. Not a dollar will be taken from the treasury of the State, no pecuniary obligation of it will be enforced, none of its property affected by any decree which may be rendered." And this same doctrine was announced in Railroad v. Missouri Railroad and Warehouse Commissioners, 183 U. S. 53; Prout v. Starr, 188 U. S. 537; Ex parte Young, 209 U. S. 123. So in these two cases; in the one in the United States Circuit Court, the State officials were enjoined from doing certain things against the relators, whereas in the other case in the State circuit court it is proposed to enjoin the railroads from demanding

and receiving the various fares set out in the petition for this writ of prohibition. Thus we have two cases in courts of ordinary co-ordinate jurisdiction where the power of the courts is being exercised between practically the same parties in interest, to-wit, the carriers on one hand and the shippers and passengers on the other upon the same subject-matter, and the two courts are thus brought in conflict with each other.

In Covell v. Heyman, 111 U. S. 176, it was said by the Supreme Court of the United States: "The forbearance which courts of co-ordinate jurisdiction, administered under a single system, exercise towards each other, whereby conflicts are avoided, by avoiding interference with the process of each other, is a principle of comity, with perhaps no higher sanction than the utility which came from concord; but between State courts and those of the United States, it is something more. It is a principle of right and of law, and therefore, of necessity. It leaves nothing to discretion or mere convenience. These courts do not belong to the same system so far as their jurisdiction is concurrent; and although they co-exist in the same space, they are independent, and have no common superior. They exercise jurisdiction, it is true, within the same territory, but not in the same plane; and when one takes into its jurisdiction a specific thing, that *res* is as much withdrawn from the judicial power of the other, as if it had been carried physically into a different territorial sovereignty. To attempt to seize it by a foreign process is futile and void. The regulation of process, and the decision of questions relating to it, are part of the jurisdiction of the court from which it issues." This is but a statement of the general doctrine where the *res* is brought within the custody or control of a court of one system by the levy of process, either mesne or final.

"The principle that a court which has rightfully taken jurisdiction over a subject-matter of litigation,

and has adjudicated the rights of the parties, is bound
to secure to the prevailing party the fruits of the liti-
gation, and to that end, when necessary, by injunction
or otherwise, may restrain the other party from at-
tempting to evade or escape the effect of the judgment
by bringing proceedings in other courts, according to
the ruling of the Supreme Court of the United States
in the cases last cited, and subject to the limitations
therein contained, is, in its application, not confined to
courts of the United States, but embraces also
the courts of the several states.    It is just as
much the duty and the right and within the
power of the State courts to secure litigants
therein the full benefit of the judgment there-
in pronounced as it is in like circumstances the
duty of the Federal court to extend protection to liti-
gants within its jurisdiction.'' [Gates v. Bucki, 53
Fed. l. c. 969.] And in this case it appears that im-
mediately upon the filing of this injunction proceed-
ing in the circuit court of St. Louis, the circuit court
of the United States at once caused the circuit attorney
to be cited before that court and the decree was so
amended as to enjoin and prohibit him from further
prosecuting this injunction case in the circuit court
of St. Louis.   While it is insisted by the respondent
that the cases are different, it is perfectly apparent to
us that this injunction proceeding is an indirect appeal
or method of reviewing and obstructing the decree of
the Federal court.   Thus in his brief, respondent says:
''Inasmuch as the decree of the United States Court
is based palpably on a misapprehension of the effect
of the Session Act of 1907, page 170, repealing in terms
section 1192, Revised Statutes 1899, it follows that re-
lators cannot use the amended final decree as handed
down by that court for the purpose of showing any
rights which they profess to possess thereunder.'' But
the circuit court of the United States, having jurisdic-
tion of that cause and having rendered a final decree

therein and having under the equity practice obtaining in the Federal Courts retained jurisdiction for the purpose of enforcing its said decree and having brought the prosecuting attorney before it and made him a party to the said decree, it seems perfectly apparent to us that the only orderly and regular way of avoiding the effect of this decree is by an appeal or writ of error from the judgment of the United States Circuit Court, and that decree cannot be impeached collaterally by the circuit court of the city of St. Louis without violating that principle of comity and jurisprudence that has ever obtained and marked the course of the State and Federal courts in this country, in matters where their jurisdiction might ordinarily be coordinate. It is intolerable under our system of laws that a law shall be interpreted and decided in two different ways under the same government. As was said by this court in Thomas v. Mead, 36 Mo. l. c. 249: "If this were to be allowed, or if there were no power in the Supreme Court to interfere by prohibition in the exercise of its original jurisdiction, and that superintending control which is given by the Constitution, the inferior courts might be brought into unseemly conflicts with one another, or with this court, and we might have to witness the disorderly and disgraceful spectacle of the officers of different courts, armed with contradictory process, meeting in direct collision in the public streets, and inaugurating riot and civil disturbance, while purporting to be acting in the name of one and the same executive authority."

Under this writ of prohibition, it is not the province of this court to pass upon and review the judgment of the circuit court of the United States in the cases wherein the relators were the complainants and the Railroad and Warehouse Commissioners and the Attorney-General and other officers of this State were the defendants. It is enough for us at this time to know that that court had jurisdiction both of the par-

ties and the subject-matter and that in due course it
rendered its decree and from that decree the defend-
ants have the right to appeal to the Supreme Court of
the United States, and this being so, that court hav-
ing taken jurisdiction of this particular matter and
having retained jurisdiction thereof, the circuit attor-
ney of the city of St. Louis could not open up and have
relitigated the questions involved in that record and
determined in the decree of the Federal court by an
injunction in the circuit court of the city of St. Louis;
and in our opinion when the pendency of that proceed-
ing and the decree of the circuit court of the United
States was brought to the attention of the respond-
ent, Judge Williams, then the restraining order should
have been dissolved and no injunction granted to pre-
vent the relators from exercising the rights which the
decree in the Federal court secured to them, pending
at least the appeal, if any shall be taken from that de-
cree.  Jealous as the States are, and of right ought
to be, of the powers reserved to them in our dual form
of government, it is still the duty of the officials of the
State to recognize these powers, which have been
granted to the Federal government by the States in
the formation of our Constitution, and to uphold and
· respect them so long as the Federal authorities keep
within the orbits prescribed for them by the organic
law.

The Act of the General Assembly of Missouri of
February 23rd, 1907, was assailed in the United States
Circuit Court as unconstitutional.   In Ex Parte
Young, 209 U. S. 1. c. 159, 164, the Supreme Court of
the United States said: "The act to be enforced is al-
leged to be unconstitutional and if it be so, the use of
the name of the State to enforce an unconstitutional
act to the injury of complainant is a proceeding with-
out the authority of and one which does not affect the
State in its sovereign or governmental capacity.   It

221 Sup—17

is simply an illegal act upon the part of a State official in attempting by the use of the name of the State to enforce a legislative enactment which is void because unconstitutional. If the act which the State Attorney-General seeks to enforce be a violation of the Federal Constitution, the officer in proceeding under such enactment comes into conflict with the superior authority of that Constitution and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. . . .   An act of the Legislature fixing rates, either for passengers or freight, is to be regarded as prima-facie valid and the *onus* rests upon the company to prove its assertion to the contrary. Under such circumstances it was stated by Mr. Justice MILLER, in his concurring opinion in Railroad v. Minnesota, 134 U. S. 418, 460, that the proper, if not the only, mode of judicial relief against the tariff of rates established by the Legislature or by its commission is by a bill in chancery asserting its unreasonable character, and that until the decree of the court in such equity suit was obtained it was not competent for each individual having dealings with a carrier or for a carrier in regard to each individual who demands its services, to raise a contest in courts over the questions which ought to be settled in this general and conclusive manner. This remedy by bill in equity is referred to and approved by the court in Railroad v. Gill, 156 U. S. 649, 659, 666, although that question was not then directly before the court. Such remedy is undoubtedly the most convenient, the most comprehensive and the most orderly way in which the rights of all parties can be properly, fairly and adequately passed upon. It cannot be to the real interest of any one to injure or cripple the resources of the railroad companies of the country, because the prosperity of both the railroads and the country is most intimately connected. The question of the sufficiency of rates is important and controlling and be-

ing of a judicial nature it ought to be settled at the earliest moment by some court and *when a Federal court first obtains jurisdiction it ought on general principles of jurisprudence to be permitted to finish the inquiry and make a conclusive judgment to the exclusion of all other courts.* This is all that is claimed and this we think must be admitted."

The proceeding by the circuit attorney in this case is of the same character as that pursued by the Attorney-General of Minnesota in that case. A Federal circuit court had in each case obtained jurisdiction and the Attorney-General in that case assumed the right to proceed to enforce the enjoined State statute on the theory that the State was independent of the decrees of the Federal court, but he was cited for contempt and held to have been guilty of contempt in violating the injunction, and the Supreme Court of the United States affirmed the judgment of contempt. Reduced to its last practical analysis, this is the purpose of the circuit attorney in the injunction case in the circuit court of the city of St. Louis. It is a defiance of the decree of the United States Circuit Court, and if permitted to go on can be productive of no good, but may be of infinite harm, to say nothing of the annoyance of multiplied litigation. If the State of Missouri deems the decree of the United States Circuit Court erroneous and oppressive, it doubtless will appeal to the proper appellate court of the United States, and that court being the final arbiter where Federal questions are involved, every officer and good citizen must yield obedience. The United States Circuit Court having found the Act of the Missouri Legislature of February 23rd, 1907, unconstitutional and void and confiscatory, and that court having first obtained jurisdiction of that question, the orderly and proper way to settle that question finally is to appeal that case to the Federal appellate court and not by a multiplicity of other suits and prosecutions involving the same

questions. In our opinion, this court, in the exercise of its superintending control over the circuit court of St. Louis, should prohibit the said court from further asserting jurisdiction of said injunction, at least, until after the appeal of the State from Judge McPherson's decree shall have been finally determined and reversed; for if affirmed, then there will be no further occasion for endeavoring to enforce the two-cent rate.

III.   Whether the writ of prohibition should be awarded in this case also involves the important question, is the State a party to the injunction suit pending in respondent's court "*in its own behalf?*"'

Section 3637, Revised Statutes 1899, provides: "No injunction, unless on final hearing or judgment, *shall issue in any case* except in suits *instituted by the State in its own behalf, until* the plaintiff, or some responsible person for him, shall have executed a bond with sufficient surety or sureties to the other party, in such sum as the court or judge shall deem sufficient," etc.   The respondent, Judge Williams, not only granted the restraining and injunctive order without requiring a bond, but refused to set the same aside when moved to do so, on the ground that the State was a party to the injunction suit, and by the express language of the statute was relieved from giving the bond, and upon this position, issue is joined and the solution is full of difficulties, in view of the decisions of this court and of the Supreme Court of the United States. In State ex rel. Circuit Attorney v. Saline County Court, 51 Mo. 350, it was ruled after exhaustive discussion that the Attorney-General, and in a proper case the circuit attorney, could institute and prosecute proceedings in the name of the State to restrain public and private corporations from exercising powers not granted, and from abuse of those granted, and the decision was supported by many English decisions and is the accepted law of this State to-day, but while the

Attorney-General may use the name of the State in any county of the State, in a proper case, it by no means follows that the circuit attorney of St. Louis or a prosecuting attorney or all prosecuting attorneys may use the name of the State in enjoining or restraining *corporate delinquencies or abuses outside of their respective counties* or city, or that they may use the name of the State to avoid giving bond, in any case.

The duties of the Attorney-General are defined by statute and so are those of the prosecuting attorneys and a careful reading of sections 4943 and 4950, Revised Statutes 1899, will, we think, demonstrate that the law-making power charged the Attorney-General with the duty of conducting *all litigation* on behalf of the State, as distinguished from a county or some municipality, and that it was the obvious purpose to restrict the circuit attorney of St. Louis, and the various prosecuting attorneys of the counties of the State, to those matters which arise in their respective counties or city and which affect the interests of their respective local jurisdictions. It will not be seriously asserted, we think, by any lawyer, that the circuit attorney of St. Louis has authority to prosecute a crime committed outside of the corporate limits of St. Louis, and yet the duties and powers of prosecuting attorneys are conferred by the same section which limits such duties and powers to action in their respective counties. It appears that this was the view of the pleader who drew the bill in said injunction case because care is taken to allege that the relators are operating railroads and carrying on their business as common carriers not only in Missouri *but in the city of St. Louis.* However, it is perfectly obvious that the subject-matter of the action is not something that pertains solely to the city of St. Louis, but is intended to enjoin railroads that do not approach the said city from any direction and are many miles distant therefrom.

Whatever may be the duties of the railroad com-

panies under the laws of this State and whatever reme-
dies may be enforced against them, it must be, so far
as the city of St. Louis is concerned, with reference to
the general subject-matter of the transportation of
passengers throughout the State, and such unquestion-
ably is the scope of this bill for injunction. So that
to authorize the circuit attorney to sustain a bill of this
character, affecting all the railroads of the State and
their relation to the State at large, it must be conceded
that his duties and powers are concurrent with those
of the Attorney-General. Clearly if the circuit attor-
ney of St. Louis can maintain that suit, the Attorney-
General could have done so, and the prosecuting attor-
neys of all the counties could have done so, and inter-
minable confusion might result from their different
theories and neither could control the other. If the
theory of the respondent is carried to its logical con-
clusion, then the circuit attorney of St. Louis might
institute such suit in any of the various counties. We
do not think the decided cases warrant any such conclu-
sion. In State ex rel. v. Saline County Court, 51 Mo.
350, the bonds which the county court was enjoined
from issuing affected Saline county *only*, and the cir-
cuit attorney at that time was the representative of
the State in the circuit in which Saline county was sit-
uated. That case affords no precedent for holding
that the circuit attorney of St. Louis may institute
such actions outside of St. Louis. As to State ex rel. v.
Zachritz, 166 Mo. 307, that was a suit by the Attorney-
General in the circuit court of St. Louis to annul and
cancel certain licenses issued by the State Auditor to
the Delmar Jockey Club, which it was alleged were
obtained from the State Auditor "wrongfully, fraudu-
lently and surreptitiously." It is obvious that the de-
cision rests upon the fact that the State had a direct
pecuniary interest, in addition to its general govern-
mental control. The other cases cited are based upon
the violation of the express constitutional provision

rendering unlawful the acts of public corporations. The circuit court held that the State was the plaintiff and for that reason refused to require a bond, and thus relators have no recourse against any one if their judgment in the United States Circuit Court is affirmed. If the State was the plaintiff in its own behalf the injunction suit should have been instituted by the Attorney-General, and not by the circuit attorney of St. Louis. In our opinion the use of the name of the State by the circuit attorney was entirely unauthorized and while advantage might be taken of this in the circuit court and cannot avail here to show want of jurisdiction, it does sufficiently appear that in legal and constitutional sense the State is not such a party to this suit as to exempt the plaintiff from giving a bond as a condition precedent to the issuing of a temporary injunction. But it is evident, because it is so stated in the petition for injunction, that the circuit attorney and the circuit court rely for authority in the circuit attorney to institute the injunction proceeding and for the jurisdiction of the circuit court thereof, upon section 8970, Revised Statutes 1899, and the amendment thereof in 1907. [Laws of 1907, p. 379.] That section provides: ''The several circuit courts of this State are hereby invested with jurisdiction to prevent and restrain any person or persons, corporation, partnership, individual or association of individuals, from entering into any combinations, pools, agreements in the form of trusts, confederation, conspiracy or understanding *declared illegal by this act,* or any other law of this State relative to pools, trusts, conspiracies and unlawful combinations.'' By the very terms of this section and as amended, this special jurisdiction is vested to enjoin combinations, conspiracies, pools and trusts prohibited by that act, and that act does not relate to the transportation of passengers and it was so ruled in the Standard Oil case, 218 Mo. 1. In our opinion that act does not confer jurisdiction upon the

circuit courts to restrain agreements as to passenger traffic, but is confined by its own terms to persons or corporations dealing in commodities. The question when the State is a party under the Eleventh Amendment to the Constitution of the United States exempting it from being sued by a citizen of another State and under the statute for removal of causes from the State courts to the Federal courts, has been so often ruled in the Supreme Court of the United States that we need only to refer to the last pronouncement on that subject in Ex Parte Young, 209 U. S. 123, and cases therein cited, to show that a suit like the injunction in the case of these relators v. The Attorney-General and Railroad and Warehouse Commissioners of the State is not a case against the State within the meaning of the Eleventh Amendment to the Constitution of the United States or the removal act. [Ex Parte Young, 209 U. S. l. c. 155; Reagan v. Loan & Trust Co., 154 U. S. 362.]

In our opinion there is no good reason why the circuit attorney should not have been required to file a bond as required by the statute, because in our opinion this was not and is not a suit instituted by the State *in its own behalf.*

What then is the result of the failure of the court to require a bond before granting the restraining order or temporary injunction?

In his lucid and admirable style, Commissioner MARTIN, in City of St. Louis v. St. Louis Gaslight Co., 82 Mo. l. c. 353, pointed out the reason and origin of our statutory law requiring a bond as a condition precedent to obtaining an injunction. He said: "The matter in issue involves a question of equity practice and jurisdiction as affected by our statutes relating to such questions. For a proper understanding of the issues it will be necessary to allude to the jurisdiction and practice of courts of equity in respect to damages consequent upon the dissolution of injunctions as it

existed prior to and independent of statutes. When temporary injunctions were granted, as they frequently were, upon the naked petition and *ex parte* showing of the applicant, and were afterwards dissolved in a final hearing of the cause, neither law nor equity furnished any remedy to the defendant for the damages consequent from them, however serious they might be. Such damages were considered as flowing from the judgment and order of the court and not from the plaintiff, if he did nothing more than to sue in good faith for the process awarded him. The injustice which so often resulted from hasty and unfounded orders of injunction, for the consequences of which the courts alone were responsible under the law, induced them to adopt, as far as was in their power, such measures and safeguards as might afford the defendant an indemnity against loss and injury from injunctions which ought never to have been granted." Proceeding then to consider the meaning of section 3637 (then section 2710, R. S. 1879), the Commissioner said: "This provision, which has been in force since 1835, is very plain in its terms. [R. S. 1835, p. 314.] It assumes to control the discretion of the courts in respect to safeguards for the indemnity of the defendant and prescribes a particular one in the nature of a bond, which they *must not fail to exact before issue of the order of injunction.*"

Similar statutes to our section 3637, Revised Statutes 1899, are found in many other States and construed by their highest appellate courts. Thus in Nebraska it is provided that "no injunction, unless provided by special statute, shall operate until the bond required by said section has been filed and approved;" in State ex rel. v. Greene, 48 Neb. 327, the Supreme Court, among other things, said: "The order granted by Judge Sinclair, although purporting to be a temporary injunction, required no bond to be given by the relator, nor was one in fact thereafter

executed. This order, therefore, never went into effect and had no validity whatever.  .  .  .  Such is the meaning of sections 255 and 258.  .  .  .  .  It is no contempt to disregard a temporary injunction where no bond has been given to carry the order into effect."  ·

In Kansas the statute is in all substantial respects like the section just quoted from Nebraska. In State ex rel. Bradford, Att'y-Gen'l. v. Lippert, 10 Pac. l. c. 539, HORTON, C. J., said: "Said order of injunction, even if properly issued, is *no obstacle to the granting* of the elections because the statute provides that an injunction shall not operate until the party obtaining the same shall furnish an undertaking executed by one or more sufficient sureties. No proper undertaking was given prior to the commencement of the action." It is significant this suit was brought by the Attorney-General in the name of the State.

In Ex Parte Miller, 129 Ala. 130, 87 Am. St. Rep. 49, it was ruled there can be no injunction in Alabama and consequently no contempt for its violation, until a bond has been given. "Such an order is conditional in its nature, and there can be no injunction until the bond is given. [2 High on Injunctions, sec. 1429; 1 Beach on Injunctions, sec. 269; Winslow v. Nayson, 113 Mass. 411.]"

In view of the reason of the statute exacting a bond as a condition precedent to the granting of an injunction, we are of the opinion that the requirement of it goes to the very jurisdiction of the court and that an injunction under the statute without requiring the bond and its execution and approval before the issuing of the injunction is and would be in excess of the jurisdiction of the circuit court; that, notwithstanding its general equity powers, the statute must control and be held to modify and regulate its jurisdiction, and when the consequences to a defendant are considered the statute is a wise and salutary one and should be

enforced. On this point our opinion is that the respondent in issuing his restraining order and refusing to discontinue, set aside or annul it, exceeded his jurisdiction and should be prohibited from further maintaining said temporary injunction and ordered to set aside the same.

*Burgess, Fox* and *Graves, JJ.,* concur *in toto; Lamm, J.,* concurs in first and second paragraphs and dissents as to remainder of opinion; *Woodson, J.,* concurs in result; *Valliant, C. J.,* absent.

## SEPARATE OPINION.

### CONCURRING IN PART AND DISSENTING IN PART.

LAMM, J.—I concur in paragraphs one and two of the opinion of my Brother GANTT and dissent as to the others.

(1) The admissions inferable from the form of submission under the pleadings warrant the conclusion that relators have sufficiently tested their rights below before applying here for a writ of prohibition.

(2) Furthermore, while the petition for injunction in Judge Williams' court makes allegations that the present relators, defendants there, have violated our statutes relating to pools, combinations and trusts in restraint of trade, competition, etc., yet I think those allegations are somewhat by way of coloring matter, or explanatory of the heart of the bill, and are made not otherwise than by way of inducement. They do not constitute a cause of action to themselves. The life of the bill was injunctive relief, to restrain putting in operation a three-cent fare. The naked question, then, stripped of all explanatory and extraneous matter, is whether a State court may assume jurisdiction in a matter or thing on which a Federal court has laid its hands and of which it has drawn to itself jurisdiction—upon which it has adjudicated and whose decree is appealable (not here, but) to the only court

having appellate supervisory power, *viz*: the United States Court of Appeals, or the United States Supreme Court?

That my Brother GANTT has reasoned soundly on that proposition is clear. This is a government of law. In final analysis the law is what the lawmaker says, *plus* the courts' interpretation, *plus* what they say about its constitutionality. That Federal Courts have jurisdiction to declare a State statute void as in conflict with provisions of the Constitution of the United States ought not to be denied at this day— either directly or by way of inference or argument. Nor ought there to be any hostility shown by State courts to the exercise of such power, because it is imbedded in principle and is part and parcel of our form of government. It requires little prophetic vision to see the confusion, the bitterness and civil strife resulting from conflicts in jurisdiction, from armed squabbles between sheriffs acting under orders of State courts and marshals acting under orders of circuit courts of the United States, if any other view be allowed. To be respected courts must respect each other. Should courts, whether Federal or State under a bounden duty to proceed in administering justice with calmness and dignity, set out on the road inevitably leading up to such conflicts of jurisdiction? Is jurisdiction a mere matter of power or caprice? If the Federal court assume it in the first instance (as here) may the State court take it away directly if it has the might? Or circumscribe it, baffle it or whittle it away by ingenious indirection? Or may two courts proceed on contrary theories at the selfsame time and grind a litigant between the upper and nether mill stones of jurisdiction? The one saying aye and the other nay and each speaking an imperative voice?

In the old days on the border Rob Roy and his clan had a property notion based on power alone. Of them it was said that:

"The good old rule
   Sufficeth them—the simple plan,
That they should take who have the power,
   And they should keep who can."

Such "simple plan" has no place in jurisprudence when applied to jurisdiction. So, what a State court may not seize with power, directly, it may not take in a roundabout way by "inching" over on the edges, or getting the same result by indirection.

I think the rule should go to keep the circuit court of St. Louis within the orbit of its proper jurisdiction as a State court. The decree of the Federal Court in the rate case until reversed or modified must be acquiesced in by the judicial powers of the State.

(3) But I do not agree that a prosecuting attorney of a county, suing in the name of the State for a violation of State laws in a matter affecting the whole State in the enforcement of law, may not sue out a temporary writ of injunction without giving bond. And I do not agree that the Attorney-General has power different in quality in that behalf than a prosecuting attorney. Doubtless the court ought not to grant such temporary writ where the interests of justice may be subserved by issuing but one writ and that a final one after a full hearing. To construe the statute in any other way invites violation of law. No adequate relief in the form of enjoining a violation of law and in recompense for damages to the general public could be attained, in inflamed instances, if a writ of injunction was withheld until a final hearing, unless bond is given. To exact a bond in all cases before a temporary writ issued to restrain a flagrant violation of the anti-trust law paralyzes the law. This because we ought to take judicial notice of that fact that pro-

secuting attorneys cannot or would not give bond. I think the lawmakers knew that fact and provided against it in the statute in order to pave the way and make it straight for law enforcement. Why should they give bond in prosecutions in the name of the State and leave the violators of the law to proceed (without any indemnity on their part) to violate the law?

(4) I doubt too the construction put by my brother upon our statute leveled at unlawful pools and trusts having for their purpose the restraint of trade and the destruction of competition. As I gather it his view is that the laws invoked here are not leveled at combinations relating to passenger rates. It seems to me that construction is not a necessary one, that it unnecessarily establishes a great defect in the law which an allowable construction will prevent.

(5) Nor am I willing for a final writ to go in behalf of one of the relators, the Missouri, Kansas and Texas Railway Company. We have been informed by a pleading in the nature of a supplemental return that that individual relator is in contempt of the writ of injunction issued by Judge Williams. We know that relator came here asking for prohibition on the theory that it was bound hand-and-foot by the writ of injunction. Its plea charges a great wrong was done it by tying its hands and robbing it of the relief granted by the Federal decree. The discretionary power of this court was invoked to issue the extraordinary writ of prohibition in order that the decree it had won might be carried out. We were urged to an *immediate* hearing and an *immediate* determination in order to grant relief from a situation said to be intolerable. Now how did the *act* of that relator keep pace with its plea? Not content to await our final determination of its right to relief, that relator took the law into its own hands and proceeded to violate the injunction and do as it pleased to do. Therefore, as long as we have a

*discretion,* it is entitled to no relief from us and the final rule should be so modified as to either strike its name from the petition for prohibition, or to leave that relator open to a trial in proceedings in contempt in Judge Williams' court, if he should issue a citation in that behalf and if it could be sustained—on which question I say nothing.

What I say in this regard should go with this explanation, *viz.,* learned counsel representing the Missouri, Kansas and Texas Railway Company in this court is acquit of all blame for the violation of the injunction; for the presumption must be indulged that he would not advise such irregular, defiant and demoralizing course, and that the contempt of that relator for the State's injunction could not have sprung from him, an officer of this court in the very act of appealing here for relief in the name of the law itself.