THE STATE ex rel. P. J. McENTEE et al. v. H. L. BRIGHT et al.

In Banc, December 21, 1909.

1. **PROHIBITION: Demurrer: Withdrawal of Return.** A filing by respondents in prohibition of a demurrer to the petition, or a motion to dismiss for lack of jurisdiction, is tantamount either to a withdrawal or to a waiver of their return, whether it was filed by leave of court or not. A return is in the nature of an answer. and a demurrer and answer cannot both stand at the same time, where they both cover the entire case.

2. ————: **Challenge of Jurisdiction of Lower Court.** It is not an inflexible rule that the jurisdiction of the lower court must be challenged therein as a precedent condition to relator's right to a writ of prohibition from the Supreme Court prohibiting the lower court from proceeding in the case. Such a challenge is unnecessary where the return of the lower court shows it would have been unavailing.

3. ————: **When Available.** The writ of prohibition can be directed only to a judicial officer. It cannot be used to restrain acts administrative, ministerial or legislative.

4. ——: ——: **Against Court of Impeachment.** The writ of prohibition cannot be used by the circuit court to prohibit a city council, which has resolved itself into a court of impeachment, from trying charges preferred by the mayor looking to the removal from office of a city marshal for misconduct in office. Such court of impeachment is not a part of the judicial system ordained by the Constitution, but a mere administrative or executive board of the municipal corporation.

5. ——: **Municipal Corporation: Amotion: Common Law.** A municipal corporation, both by statute and at common law, has the power to remove an officer. The statutes are founded upon the common law doctrine of amotion. And the mayor and city council, acting as a court of impeachment, are a mere administrative body of the municipal corporation, and by the statute are given the power, on behalf of the city, to remove a marshal for malfeasance, misfeasance or official incompetency.

6. ——: **Against Executive Officer.** A law officer of the State, county or city cannot be reached by the writ of prohibition. It cannot be addressed to the mayor of a city to restrain him from investigating charges against a marshal, nor can it be addressed to a city attorney, who is an executive officer.

7. ——: **Against Circuit Judge: Excess of Jurisdiction.** Although respondent is the judge of a circuit court, and such court is one of general jurisdiction and as such has power to issue writs of prohibition, the Supreme Court can prohibit him from proceeding by the court's writ to prohibit the mayor and city council, acting as a court of impeachment, from removing a city officer. The writ of prohibition from the Supreme Court is proper, not only in cases where the circuit court has no legal authority to act at all, but also in cases wherein such court, although having a general jurisdiction over a particular class of cases, has exceeded such jurisdiction in the particular cases.

FINAL WRIT AWARDED.

*G. M. Pritchett* and *W. R. Robertson* for relators.

(1) The mayor and council of Webb City, when proceeding with the hearing of the charges against the marshal, even though they were performing acts which were judicial in their nature, constituted no part of the judiciary of the State and the circuit court of Jasper county had no right or authority to interfere therewith or to undertake to substitute its judgment

or discretion for that of the mayor and council. Albright v. Fisher, 164 Mo. 56; State ex rel. v. Walbridge, 119 Mo. 383; State ex rel. v. Wells, 210 Mo. 601; Donahue v. County, 100 Ill. 94; McCray v. United States, 195 U. S. 27; 1 Dillon on Munic. Corp. (4 Ed.), sec. 242, 244; State ex rel. v. Clark, 41 Mo. 44; Vitt v. Owens, 42 Mo. 512; Hockaday v. Newsom, 48 Mo. 196; Kalbfell v. Wood, 193 Mo. 675; State ex rel. v. Goodier, 195 Mo. 551; High, Ex. Leg. Rem. (3 Ed.), sec. 782; People v. Lake City Dist. Court, 6 Colo. 534; Burch v. Hardwicke, 23 Grat. (Va.) 51; Mechem's Pub. Officers, sec. 1020, p. 675. (2) The pleadings herein disclose charges sufficient in law preferred against the city marshal; valid proceedings thereon to remove the marshal, in which he was participating; his special report and written answer therein filed admitting the truthfulness of a great majority of the charges; an order of the judge of the circuit court of Jasper county restraining further action by the council on said charges and setting aside the suspension of and restating the marshal, thereby creating an imperative demand for the exercise of the constitutional supervising power of this court over the circuit court of said county. State ex rel. v. Aloe, 152 Mo. 466; Koehler v. Snider, 177 Mo. 546; State ex rel. v. Reynolds, 209 Mo. 161; State ex rel. v. Stobie, 194 Mo. 62; Railroad v. Wear, 135 Mo. 256; State ex rel. v. Scarritt, 128 Mo. 331; State ex rel. v. Sale, 188 Mo. 493. (3) Since the judge of the circuit court made his provisional order and is now here, jointly with the accused officer, resisting this proceeding, it is unnecessary for plaintiffs herein to show any effort on their part to raise the question of jurisdiction of the circuit court, in that court, before applying to this court for relief. State ex rel. v. Sale, 188 Mo. 493; State ex rel. v. Eby, 170 Mo. 497; State ex rel. v. Aloe, 152 Mo. 466; State v. Williams, 221 Mo. 227. (4) Where a power is granted as in section 5761, Revised Statutes 1899,

to remove officers of the city the means to effectuate the power are conferred as a necessary incident, hence no ordinance of the city, as to the method of procedure, is necessary. State ex rel. v. Walker, 68 Mo. App. 110; State v. Walbridge, 119 Mo. 383. (5) Section 5761, which provides for the removal of officers of the city, is not narrowed or impaired by Sec. 5790, R. S. 1899, but the latter section is cumulative thereto and applies to misbehavior in office not contemplated by the former section. Manker v. Faulhaber, 94 Mo. 430; State ex rel. v. Slover, 113 Mo. 202; State ex rel. v. Walbridge, 119 Mo. 383; McGrew v. Railroad, 177 Mo. 533; State ex rel. v. Sheppard, 192 Mo. 497; State ex rel. v. Wallbridge, 69 Mo. App. 657; 1 Sutherland, Sta. Con. (2 Ed.), sec. 261; State v. City, 60 N. E. 705; 1 Beach, Pub. Corp., sec. 192, p. 205; Anderson's Law Dictionary, p. 879. (6) The power given by section 5761 to remove an officer necessarily includes the power to suspend pending the hearing of the charges. State v. Police Commission, 16 Mo. App. 48; State ex rel. v. Lingo, 26 Mo. 496; Westberge v. City of Kansas, 64 Mo. 493; Blackwell v. City of Thayer, 101 Mo. App. 661. (7) The statute provides that the mayor and a majority of the council elect may remove an officer and section 5757, R. S. 1899, makes it a duty of the mayor to preside over all meetings of the council and his failure to preside at such a hearing as the one involved herein would render the proceedings worthless, even with the consent of the accused officer. 28 Cyc., 435, note 98; Throop on Pub. Officers, sec. 386, p. 379.

*Frank L. Forlow* and *Mooneyham, Shepherd & Crane* for respondents.

(1) The relators should have filed a demurrer, plea in abatement or made an objection to the jurisdiction of the circuit court of Jasper county, in that court, before the proceeding in prohibition was instituted in the Supreme Court. The relators made no

objection to the jurisdiction of the circuit court presided over by Judge Bright. Schubach v. McDonald, 179 Mo. 163; People v. Wood, 21 N. Y. 245; People v. Russell, 49 Barb. 351; Ex parte Hamilton, 51 Ala. 65; State ex rel. v. Gill, 137 Mo. 681; Hudson v. Judges, 42 Mich. 239; Railroad v. Superior Court, 59 Cal. 471; Ex parte McMeechen, 12 Ark. 70; Hanger v. Keating, 26 Ark. 51; 40 Am. Dig. (Cen. Ed.) 2888; Barnen v. Gottschalk, 3 Mo. App. 111. (2) Judicial questions only will be determined by proceedings in prohibition. The only questions involved in a prohibition case are: First. Has the inferior tribunal exercised and is it exercising jurisdiction which it does not possess? Second. After having jurisdiction over the subject-matter, has it exceeded its lawful power? McIndry v. City, 17 Colo. 304; Helms v. Vaughn, 84 Va. 693; State v. Withrow, 108 Mo. 1; State v. Fox, 85 Mo. 61; State v. Keys, 75 Wis. 288; Ex parte Railroad, 104 U. S. 519. (3) When a court acts within the general jurisdictional sphere, but error is alleged in exercising the jurisdiction in the particular case, the Supreme Court will not interfere by prohibition. Wilson v. Burkstresser, 45 Mo. 283; State ex rel. v. Burkhart, 87 Mo. 533; State ex rel. v. Zachritz, 166 Mo. 315; State ex rel. v. Klein, 116 Mo. 259; State ex rel. v. Strobie, 194 Mo. 45; State ex rel. v. Railroad, 100 Mo. 59. See also Maston v. Sloan, 98 Mo. 252; State ex rel. v. Smith, 104 Mo. 419; State v. Withrow, 108 Mo. 1. (4) Section 1, of article 6, of the Constitution of Missouri, provides that the judicial power of the State as to matters of law and equity, except as in this Constitution provided, shall be vested in a Supreme Court, the St. Louis Court of Appeals, Circuit Courts, Criminal Courts, Probate Courts, County Courts, and Municipal Corporation Courts. The word "court" is there used in its technical sense. A court is a judicial assembly, the judge of the court is its presiding officer. While the judge is often called the court, yet he is only so rightly called when the tri-

bunal over which he presides is in session. Bouvier's
Law Dictionary gives to the word ''court'' this defini-
tion: ''A body in the government to which the pub-.
lic administration of justice is delegated.'' State ex
rel. v. Woodson, 161 Mo. 453. All judicial power in
this State is by our Constitution vested in certain
courts therein named, Art. 6, section 1, Constitution.
The General Assembly has no authority to create any
other tribunal and vest it with judicial power. State
ex rel. v. Ryan, 182 Mo. 355.

GRAVES, J.—This is an original proceeding in
prohibition. Relators are the mayor, all the city coun-
cilmen, except one, and the city attorney, of Webb City,
Jasper county, Missouri, a city of the third class. Re-
spondents are Henry L. Bright, Judge of Division
No. 1 of the circuit court of Jasper county, Missouri;
Joseph H. McNeill, marshal of Webb City, and Joseph
H. Williams, a councilman of said city, who refused to
join in this proceeding.

The history of the case gathered from the facts
pleaded in this action are about as follows:

On April 26, 1909, McEntee, the mayor of Webb
City, suspended from office the said McNeill, marshal
of said city, for reasons as in his order stated: ''for
the reasons that he has been guilty of wilful violation
of official obligations, culpable official negligence, dere-
liction of duty, conduct inconsistent with his official
character and duty and official incompetency, as is more
specifically and fully set out in said charge accompany-
ing this order.''

Accompanying this order of suspension, which or-
der was duly signed by the Mayor, there are fifty-seven
specific charges made by the Mayor. The charges
are thus headed:

''Charges against J. H. McNeill as Marshal of
Webb City, Jasper County, Missouri.

"I, P. J. McEntee, as mayor of said city of Webb City, Jasper county, Missouri, in support of the above suspension of said J. H. McNeill, as Marshal of said city, and as cause for his removal from office, charge that said J. H. McNeill as Marshal of said city is guilty of wilful violation of his official obligations; culpable negligence and dereliction of duty; of conduct inconsistent with his official character and duty, and of official incompetency as follows, to wit:"

Then follow the fifty-seven specific charges which cover nearly all imaginable derelictions of duty that could be charged to a city marshal, including a number of fines which had been collected and not accounted for, as well as the collection of fines under color of his office in several cases wherein there had been no proceedings against the parties. Further details are not required at this point.

The charges of the mayor thus closed: "I, therefore, P. J. McEntee, as mayor of said city, for the reasons set out, have under and by virtue of the authority in me vested by the ordinances of the said city, and the statutes of Missouri, suspended the said J. H. McNeill from the office of marshal of said city, being convinced of the truthfulness of said charges and desiring the said J. H. McNeill to be removed from the office of Marshal of said city, do hereby submit to your honorable body the foregoing charges to the end that you may consent to a final removal from the office of Marshal of said city, the said J. H. McNeill.

"P. J. McEntee, as mayor of Webb City, Mo."

These charges and order of suspension were presented to the city council on April 26, 1909, the said McNeill having been previously served with copies thereof.

At said date McNeill and his attorneys appeared before the council, and time in which to file answers to the charges was requested, and in compliance with said request, the council adjourned to May 4, 1909. On May

3rd, McNeill made a report of fines or parts of fines which had been collected in the sum of $112.85, which fines, the report says, were in the hands of a deputy marshal and had not been reported to him. May 4th, the council met pursuant to adjournment and resolved itself into a court of impeachment, McEntee being elected president and L. O. Walker, clerk of said court, the oath of office being administered to all of them by the circuit clerk of the county. McNeill and his counsel were present and filed an answer to the charges. The witnesses for the city were called and sworn, and by consent, the court of impeachment adjourned to May 5th. On May 5th, the mayor filed a reply to the answer of the Marshal and testimony was heard. Different hearings were then had on May 7th, 12th, 13th and 14th, McNeill and his counsel being present at all the dates and requesting adjournments at times. On May 14th, McNeill and his counsel, after offering numerous witnesses, requested an adjournment to May 17, 1909, which request was granted.

On May 17th, the respondent Bright, in vacation of court, issued upon the application of McNeill, the following order, omitting the caption:

"Joseph H. McNeill, relator herein, comes now on this day and presents to this court his petition, praying that a writ of prohibition be issued by this court, and that pending the hearing of said cause an order of court be directed to the above-named respondents, to prohibit said respondents and each of them from proceeding any further in a certain proceeding now pending before the city council of Webb City, Missouri, sitting as a board of impeachment; wherein the respondents are attempting to remove relator from the office of city marshal of Webb City, Missouri; the object and nature of said proceeding being more fully set out in the petition of relator on file herein; and on motion of the relator herein, and such petition being heard on presentation, and upon reading the affidavit

on file herein in support thereof, and the court being fully advised in the premises finds that said petition is sufficient in law; that the same is supported by persuasive evidence of its truth, and thus being well advised therein, on full consideration thereof, hereby orders that said respondents above named and each of them, do appear before this court on the 7th day of of June, A. D. 1909, at the hour of 10 o'clock of said day, and show cause why final judgment in prohibition should not be entered in the above entitled cause as is prayed by relator in his said petition. And the court does further order that in the meantime the said respondents above named and each of them refrain from suspending or attempting to suspend, or from removing or attempting to remove, relator from the office of City Marshal of Webb City, Missouri, until the further order of this court. Witness H. L. Bright, Judge of the circuit court within and for the county of Jasper, State of Missouri, and the seal of said Court heretofore affixed, this 17th day of May, A. D. 1909.

"Henry L. Bright, Judge."

In this action as indicated by the caption of the order McNeill was relator, and the mayor, all the city councilmen and the city attorney were respondents. The petition upon which the order was made will be noticed later.

Upon application this court issued a provisional writ of prohibition, to which respondents made return, and relators filed a motion to quash the return or to enter judgment upon the pleadings. The latter motion was filed June 10, 1909. On October 12, 1909, the respondents jointly filed what they called their motion to dismiss this cause, stating seven reasons therefor, mostly going to the jurisdiction and right of this court to issue the provisional writ.

I. The motion last filed by the respondents as stated above is by them called a motion to dismiss. It is so labeled, but upon its face it appears to be dual in character. It challenges the jurisdiction of this court, and in that sense it might be called a motion, as there is such a thing as a motion to dismiss a proceeding because the court has no jurisdiction. But it further challenges the sufficiency of the relator's petition and in that sense is a demurrer. But, whatever it be, it is the last pleading filed by the respondents, and the question now is upon what pleadings shall we determine the case. To be more pointed, shall we determine the case on relators' petition, respondents' return, and relators' motion for judgment on these two pleadings, or shall we determine the case upon relators' petition and respondents' so-called motion to dismiss?

Ordinarily respondents, after making return, before filing any pleading in the nature of a demurrer, should have gotten leave of court to withdraw their return before filing the other pleading, but having filed it without taking such leave we are at liberty, if we so desire, to treat the return as withdrawn, and proceed with the case upon the issues made by the last pleading. In fact the filing of the last pleading is tantamount to a withdrawal of the return, in law. If not a withdrawal at least a waiver of the return.

A return is in the nature of an answer and a demurrer and answer can't both stand at the same time, where they both cover the entire case. The rule is well stated in 6 Ency. Pl. & Prac., p. 382, thus: "A party may demur to one part of a declaration, petition, or complaint, and plead or answer to another, but he cannot demur and plead or answer at the same time to the same part of the pleading. There cannot be an issue of law and of fact to the same pleading or part of a pleading at the same time. Thus there cannot be a general demurrer and a plea or answer to the whole

declaration or complaint at the same time, nor to the same count, or paragraph, except where the matters therein stated are divisible in their nature, and a part of the count or paragraph is good and a part bad; where this is the case, defendant may plead to the former and demur to the latter.'' The author has collated the authorities from the different states, and we will not repeat the citation here.

It is a rule too well established to need citation of authority that if a party demurs and then afterward answers, he is deemed to have withdrawn, waived or abandoned his demurrer. By analogy, the converse should be true. That is, if a party has answered and afterward demurs, he should be deemed as having withdrawn, waived or abandoned his answer.

In Dunklin County v. Clark, 51 Mo. l. c. 61, this court came up to the question in a way. We there said: ''If a demurrer be filed and not disposed of, and an answer is afterwards filed and the case is tried on the answer, that amounts to a waiver of the demurrer. And in like manner, where an answer is filed and afterwards the case goes off on demurrer without noticing the answer, the proceedings on the demurrer amount to a withdrawal of the answer.''

In Henley v. Henley, 93 Mo. 95, there were a petition and answers. The answers, besides other matters, set up a special defense, that of former adjudication. To these answers the plaintiff filed a reply in the nature of a general denial, and a demurrer to the special defense aforesaid. The court sustained the demurrer and then entered judgment dismissing plaintiff's bill, with the issues raised by the petition, unattacked portions of the answers, and reply yet pending. Judge BLACK, speaking for the court, said: ''It is not claimed that there was error in overruling the demurrer, but it is said there was error in giving judgment of dismissal at that stage of the case, and that the court should have tried the issues of fact, present-

ed on the petition, answer, and reply. The judgment shows that the plaintiffs, by their attorneys, elected to stand by their demurrer, and refused to further plead or reply to the answer. As the demurrer was specific and interposed only to the special defense, the reply, though general, having been filed at the same time, must be regarded as relating alone to the other affirmative matter stated in the answer. Even if the reply was designed to make an issue of fact on the plea of a former adjudication, insisting upon the demurrer thereafter would amount to a withdrawal of the reply as to the special defense to which the demurrer was interposed. [Dunklin County v. Clark, 51 Mo. 60.]''

It is to the latter lines of this quotation that we direct attention. They are peculiarly applicable to the case at bar, because the brief filed by respondents insists upon the motion to dismiss. In fact their whole statement and a greater portion of their brief is directed to this motion.

The same question is likewise discussed and along the same lines by PHILIPS, P. J., in Fadley v. Smith, 23 Mo. App. l. c. 95.

In our judgment the filing of the latter motion was tantamount in law to a withdrawal of the return, or a waiver or abandonment thereof. But in this case an examination of the return and the motion shows that the same or practically the same legal questions are raised, for when you have taken from the return the admissions made as to allegations in the petition, we only have left the legal questions common to both papers. So that in this case we shall, as counsel have done, proceed to consider both instruments, not intending however that such shall be considered as a precedent for future pleading in this manner.

II. Considering both instruments, one of the points made is that the relators' petition here fails to aver, and therefore the admitted facts fail to show, that re-

lators, then respondents, in the circuit court of Jasper county made objection to the jurisdiction of that Court prior to the application for a writ of prohibition here. It has never been a hard and fast rule in this State that the jurisdiction of the lower court must first be challenged therein before a provisional writ can issue from this court. [State ex rel. v. Aloe, 152 Mo. l. c. 484; State ex rel. v. Eby, 170 Mo. l. c. 518; State ex rel. v. Sale, 188 Mo. l. c. 496; State ex rel. v. Williams, 221 Mo. 227.]

In the Aloe case, with the same question before us, this court said: "It is not a jurisdictional requirement, it is not essential like a motion for a new trial before appeal. The writ of prohibition does not issue *ex debito justitiae* but only in the discretion of the court. When the applicant has made out his *prima facie* case, bringing it within the technical requirements of the law, the question still remains for the court, does the real right and justice of the case call for this extraordinary remedy? In determining the question, if there is anything in the circumstances suggesting that the party has neglected to apply for relief that was reasonably available, the writ would be withheld, at least until such relief was sought. The Supreme Court of California, in the case last cited, took this view of the subject, and held that the failure to apply to the lower court to discharge the receiver did not justify a denial of the writ of prohibition. [Havemeyer v. Superior Court, 84 Cal. 397, citing Mayor of London v. Cox, L. R. 2 H. L. 278-280.] The point is not presented in the briefs of the learned counsel accompanied with any suggestion on their part that an application to the circuit court would have availed, but they present it as a fixed bar to the relator's application for this writ. We do not so regard it."

Neither do counsel for respondents in this case make any suggestion that the court in Jasper county would not have held on with a death grip to jurisdiction

of the cause pending before that court. On the contrary, the Judge of that court joins in the return made by the City Marshal, affirming his right to proceed with the case. Thus by the return it is shown that a challenge to the jurisdiction would have been unavailing.

In State ex rel. v. Eby, *supra,* SHERWOOD, J., crisply puts state law thus: ''The point is made on behalf of respondents that relators cannot have prohibition because the lack of such jurisdiction has not been raised or pleaded in the lower court; and that this is *elementary law.* This view is frequently found expressed in text-books. [High, Extr. Leg. Rem. (3 Ed.), sec. 773; 2 Spelling, Inj. and Extr. Rem. (2 Ed.), sec. 1731.] But this is not the law if it is to be taken as invariably true; true without variation or shadow of turning. In fact there are so many exceptions to the hackneyed rule, that the doctrine it announces is now received with many degrees of allowance and, as will presently appear, is not an absolute touchstone of jurisdiction. In short, the fact of having pleaded lack of jurisdiction in the lower court is not by any means a *sine qua non* of jurisdiction in the supervising court to issue the provisional rule.'' He then proceeds · to review the case law upon the subject.

The last expression of this Court found in the case of State ex rel. v. Williams, 221 Mo. 227, endorses the doctrine of the previous cases hereinabove cited, and cites many authorities from other jurisdictions to a like effect.

This contention will therefore be ruled against respondents.

III.   It is well-settled law that a writ of prohibition must be directed to some judicial officer. In other words, its purpose is to restrain judicial action, and not legislative, executive or administrative action. [32 Cyc., p. 600; High Extr. Leg. Rem., sec. 782; Me-

chem's Public Offices and Officers, sec. 1019; State v. Hathaway, 115 Mo. 36; State ex rel. v. Goodier, 195 Mo. l. c. 561.]

The general rule is thus announced in 32 Cyc. supra: "The writ will lie only to restrain the unlawful exercise of judicial functions by an inferior tribunal, acts of an administrative or ministerial or of a legislative character not falling within its province."

Under this general rule the author has collated the authorities from all the states and with few exceptions this is the doctrine of the courts. A few courts hold that administrative boards exercising what is called quasi-judicial functions may be reached by the writ (32 Cyc., p. 601), but these cases are few and confined to two or three states.

Now the gist of this case lies in the character of this court of impeachment. If it is a part of the judiciary of the State, designated and authorized by the Constitution, then a writ of prohibition can be directed to it upon proper grounds and upon proper application, but if it is not a part of the judicial system authorized by the Constitution and is a mere administrative or executive board of a municipal corporation, then such writ cannot be directed to it. If a writ of prohibition could be properly and lawfully directed to it, the judge of the circuit court of Jasper county had authority so to do, but if not then the judge exceeded his lawful authority in issuing the writ, and this court was right in stopping such judge from doing an act in excess of his lawful authority. So that, whilst there is a mass of charges and counter charges in the voluminous pleadings in this case, as well as in the case in the circuit court, the case proper is narrowed down to a very small compass.

The city council and the mayor were proceeding under section 5761 and 5790, Revised Statutes 1899, and an ordinance of the city passed thereunder. These statutes and ordinances the respondents attack as un-

constitutional, ''for the reason that they confer judicial functions on the mayor and city council contrary to section 1, article 6, of the Constitution of Missouri.'' And they further say that, inasmuch as article 4 of chapter 91, Revised Statutes 1899, does not provide for an appeal from the judgment of such court of impeachment, or for a trial *de novo* in the circuit court, and there being no such remedy afforded by any other law, ''said sections of article 4 of chapter 91, Revised Statutes 1899, attempt to confer exclusive original jurisdiction, as well as final jurisdiction, on the city council and are therefore violative of section 1 of article 14 of the Constitution of the United States.''

The statute, section 5761, *supra,* provides: ''The mayor may, with the consent of a majority of all the members elected to the city council, remove from office, for cause shown, any elective officer of the city, such officer first being given opportunity, together with his witnesses, to be heard before the council, sitting as a court of impeachment. Any elective officer may in like manner, for cause shown, be removed from office by a two-thirds vote of all the members elected to the city council, independently of the mayor's approval or recommendation. The mayor may, with the consent of a majority of all the members elected to the council, remove from office any appointive officer of the city at will; and any such appointive officer may be so removed by a two-thirds vote of all the members elected to the council, independently of the mayor's approval or recommendation. The council may pass ordinances regulating the manner of impeachment and removals.''

The ordinance in question provided for the suspension of any officer of the city for such acts of malfeasance and misfeasance and of official incompetency, as are contained in these charges against the city marshal.

These constitutional questions are really outside of a discussion necessary to determine this case. The question here is what is the real character of this court of impeachment? If it is a court within the meaning of the Constitution, then all questions as to constitutionality of the laws under which the court acts can be determined in a proceeding in prohibition, but if it is not such court, then relief must be sought in some other proceeding. So that after all the sole question to be determined is the character of the body which was trying McNeill for his official life. To our mind it is not such a body to which a writ of prohibition can be directed.

In discussing such writ, Mechem's Public Offices and Officers, sec. 1020, says: "Hence the writ will not be granted to restrain the secretary of the interior from convening a court-martial, or the governor from issuing a commission; nor to restrain the mayor or common council of a city from proceeding to investigate charges against a municipal officer." To like effect is High on Extraordinary Legal Remedies (3 Ed.), sec. 783.

Statutes of this and other states authorizing the removal of municipal officers are founded upon the common law doctrine of amotion. They are in a sense but declaratory of the common law doctrine aforesaid. [1 Dillon on Munic. Corp. (4 Ed.), sections 240 to 243, inclusive.] Section 241 reads: "But the power to amove, like every other incidental power, is incident to the corporation at large, and not to any select body or particular part of it, and unless delegated to a select body or part, it must be exercised by the whole corporation, and at a corporate assembly regularly and duly convened. The power to hold such an assembly is, however, implied in the power of amotion." This distinguished author after tracing the English origin of the laws, in section 244 says: "A provision in a city charter vesting the *board of aldermen with the sole*

*power to try all impeachments of city officers,* the judgment only extending to removal and disqualification to hold any corporate office under the charter, *is not unconstitutional* as authorizing the exercise of judicial powers by a legislative or municipal body, but is rather the exercise of a power necessary for its police and good administration."

Colorado, with a constitutional provision practically borrowed from ours, has passed upon the exact question in case of People ex rel. v. District Court, 6 Colo. l. c. 536, whereat that court said:

"It will be observed that the tribunal to which the writ issues must be acting in a judicial and not merely an administrative or ministerial capacity. See High Ex. Leg. Rem. par. 769; Insurance Co. v. Flint, 13 Minn. 244, and cases therein cited. "The city council is not a judicial body; and it is doubtful if the Legislature, under the Constitution, could invest it with judicial authority. In the case under consideration it was not acting or attempting to act in a judicial capacity. The examination of charges preferred against the city solicitor, finding him guilty of malfeasance in office, and removing him therefrom, by the city council, was not the exercise of judicial power. And this is true though the offenses charged may constitute causes of action cognizable by the courts. See Donahue v. County of Will, 100 Ill. 94.""

The Donahue case referred to by the Colorado case, *supra,* is a case wherein the Board of County Supervisors, removed a County Treasurer and ex-officio Collector for failing to pay over county moneys, under a statute of Illinois authorizing such act upon investigation. The officer there raised the question that the statute was unconstitutional in that it conferred judicial powers upon the board, and further claimed that he could not be removed except by proper proceeding in a judicial proceeding. The contention was disallowed and Mr. Justice WALKER, speaking of the fram-

ers of their Constitution, made some remarks very pertinent here: "They knew that a proceeding by *quo warranto*, with the right to appeal, would be useless where the term fixed is of short duration, as it would expire before a final decision would be reached. The body, as practical men, could not have intended that such slow processes should be adopted, and thus permit a reckless, dishonest and irresponsible officer to collect and defiantly squander the public revenue, compel his bondsmen to stand by and see him working their financial ruin, and neither the public nor the individuals be able to check it, but to wait till his office expires before he is removed or checked in his destructive course. We must presume the framers of the Constitution intended to place no limitation on the power of the General Assembly to provide ample and effective means to prevent such wrongs to the public and to individuals. Possessing legislative power, the General Assembly was fully competent to prescribe the offences which should work a forfeiture of this office, and provide what tribunal shall determine the fact."

In Fuller v. Attorney-General, 98 Mich. l. c. 104, it is said: "To the proposition that removing boards perform acts which are judicial in their nature, we readily assent. They must hear and determine, when the power is limited to removals for cause. So must boards of review, auditing boards, highway and drain officers, pardon boards, and in fact nearly every officer who has duties to perform; and it is also true that the action of all of these is subject to review in courts of justice. None of them, however, belong to the judicial department of government, nor can they be called judicial officers, though all perform acts in their nature judicial. Their acts are administrative. [Donahue v. County of Will, supra; State ex rel. v. Hawkins, 44 Ohio St. 98.]"

Nor are we without authority in this State. The city charter of the city of St. Louis vests power to hear

and determine the question of removing certain city officers in the mayor. The commissioner of public buildings in said city had charges preferred against him, and said charges were heard by the mayor, at which hearing the officer and witnesses were present and heard. The mayor found the officer guilty, whereupon he sued out a writ of *certiorari* from the circuit court, and upon due return thereof being made by the mayor, the officer filed his motion to quash the proceedings, which motion being overruled, the case reached this court by appeal, and was determined at the October Term, 1907. [State ex rel. v. Wells, 210 Mo. 601.] It was there urged that the Mayor, a mere executive officer, was violating the Constitution by exercising judicial functions. This contention was not sustained by this court. Fox, P. J., at page 610, says: "Upon these provisions of the Constitution learned counsel for appellant predicates his contention and seeks to draw the conclusion that, inasmuch as the mayor is an executive officer, he cannot exercise the powers of a judge. It is sufficient to say upon that insistence that, in contemplation of the provisions of the Constitution wherein it vests the judicial power in the courts of the State, the mayor is not a judicial officer, nor under the terms of the Constitution is he to be denominated a judge in any way connected with the judicial department of the State. Manifestly one to be a judicial officer must in some way be connected with the judicial department. Judges of judicial tribunals contemplated by the Constitution must be the presiding officers of some tribunal whose jurisdiction or power is defined or prescribed by the Constitution or laws made thereunder."

To a like effect is State ex rel. v. Walbridge, 119 Mo. 383. In this case the officer charged with official delinquencies undertook to prohibit the Mayor from trying his case. This court denied the writ. In so doing the constitutionality of the city charter was up-

held, but SHERWOOD, J., suggests the source of such statutes in this language: ''In this instance, not only was the power of amotion of an offending officer for reasonable and just cause one of the common law incidents and resultants of the incorporation of the city, but it was specifically conferred by the charter, and delegated to the Mayor and enforced by ordinance. It is true that neither charter nor ordinance makes any provision for the means whereby the amotion of an appointed officer is to be effected; but where a grant of power is given, all the means necessary to effectuate the power pass as incidents of the grant. [Sutherland on Stat. Constr., sec. 341; 2 Beach on Pub. Corp., sec. 1314; Ex parte Marmaduke, 91 Mo. l. c. 262, and cases cited; Grover v. Huckins, 26 Mich. 476.]'' The learned judge had previously quoted at length one of the sections to which we referred from 1 Dillon on Munic. Corp. (4 Ed.), i. e., section 240, which discusses the power of amotion at common law.

And as to whether such bodies as the one involved in this case, are courts within the meaning of section 1 of article 6, we have made some further comments, in the recent case of State ex rel. v. Andrae, 216 Mo. 617.

From the authorities there can be no question that the mayor and city council, sitting as a court of impeachment, as in this instance, is not a judicial body within the meaning of our Constitution. It is a mere administrative body under a municipal corporation, which class of corporations both by statute and common law have the power of amotion. Even at common law such corporation had the right to delegate the power of amotion to a select body, but under our statute the charter of the corporation has delegated the power in cities of the third class to the mayor and city council, and to this extent the seat of the power has been fixed. We conclude, therefore, that this body so constituted is not one to which the circuit court or

the judge thereof could address a writ of prohibition. Not that the acts of such court of impeachment may not be reviewed at all, but the Court has no legal authority to stop the proceedings of such a body. The courts can review their authority upon writs of *certiorari*. [State ex rel. v. Wells, *supra.*] Possibly other remedies might be used, but that is adrift in this case.

In addition the writ in this case went against McEntee as Mayor, and to his acts as Mayor or executive officer of said city. The writ will not lie against such officer in investigating charges against the Chief of Police. So says the Supreme Court of Virginia in Burch v. Hardwicke, 23 Gratt. 51.

Further the writ issued by the respondent Bright, as Judge of Division One of the circuit court of Jasper county, was addressed to the City Attorney of Webb City, one of the executive officers of said city. The law officer of the state, county or city cannot be reached by the writ of prohibition.

Nor will it do to say that because the respondent Bright is the judge of a court of general jurisdiction and such court can issue writs of that kind, that therefore this court cannot prohibit him from further proceeding in this case. A writ of prohibition from this court is proper, not only in cases where the lower tribunal has no legal authority to act at all, but also in cases wherein such inferior tribunal, although having general jurisdiction over a particular class of cases, has exceeded such jurisdiction in the particular case. [State ex rel. v. Reynolds, 209 Mo. 161; State ex rel. v. Williams, 221 Mo. 227.] In both of these cases the lower tribunal had general jurisdiction, and jurisdiction over the class of cases there involved, but for the excessive exercise of the judicial power thus possessed, we granted the writs of prohibition from this court. In the latter case, GANTT, J., said: "The office of a writ of prohibition has been defined so often in this jurisdiction that no time or space need be allotted to

it at this time, further than to say that we are required, by the application for the writ and the motion to dismiss, to determine whether the circuit court of the city of St. Louis, presided over by respondent, Judge WILLIAMS, in retaining and asserting its right to make and enforce the restraining orders already noted against the defendants, and in asserting its right to grant perpetual injunctions in said cause, is keeping within the bounds of the jurisdiction prescribed for it by the laws of this State, for it is now the settled doctrine that the writ lies as well to prevent an excessive or unauthorized application of judicial force as where a court assumes judicial power not granted by law.''

So in the case at bar, whilst Division One of the circuit court of Jasper county is a court of general jurisdiction, and can issue writs of prohibition, yet it exceeded its power when it directed such a writ to such a body, which under the law should not have been arrested in their proceedings by a writ of that character.

The judicial power exercised being in excess of the jurisdiction given, the provisional writ herein should be made permanent and it is so ordered.

Let the final writ of prohibition be issued. All concur, except *Burgess, J.,* not sitting.